187 F.3d 317 (2nd Cir. 1999)
 JOSEPH M. WHITING, Plaintiff-Appellee,
v.
GARRETT R. LACARA, Appellant,
THE INCORPORATED VILLAGE OF OLD BROOKVILLE; CHIEF CHARLES K. SMITH, LTN.; JOHN POST; LTN. MAURICE SULLIVAN, individually and as Members of THE OLD BROOKVILLE BOARD OF POLICE COMMISSIONERS, Defendants.
 Docket Nos. 98-9081(L), 98-9429(CON)
August Term, 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued July 12, 1999
Decided Aug. 23, 1999
 
 Appeal from orders of the United States District Court for the Eastern District of New York (Arthur D. Spatt, Judge) denying appellant's motion to withdraw as counsel. We reverse.
 ROBERT E. SOKOLSKI, New York, New York, for Appellant.
 JOSEPH M. WHITING, pro se, South Huntington, New York, for Plaintiff-Appellee.
 Before: WINTER, Chief Judge, WALKER, and CABRANES, Circuit Judges.
 PER CURIAM:
 
 
 1
 Garrett R. Lacara appeals from two orders of Judge Spatt denying Lacara's motions to withdraw as counsel for plaintiff-appellee Joseph M. Whiting. Although the record before Judge Spatt justified denial of the motions, amplification of Whiting's position at oral argument persuades us to reverse.[1]
 
 BACKGROUND
 
 2
 In July 1996, appellee, a former police officer, filed a civil rights action against Nassau County, the Incorporated Village of Old Brooksville, the Old Brooksville Police Department, other villages, and various individual defendants. The action was based on the termination of his employment as an officer. He sought $9,999,000 in damages.
 
 
 3
 Appellee's initial counsel was Jeffrey T. Schwartz. In October 1996, Robert P. Biancavilla replaced Schwartz. A jury was selected in October 1997 but was discharged when Biancavilla withdrew from the case with appellee's consent.
 
 
 4
 Whiting retained Lacara in December 1997. In June 1998, the district court partially granted defendants' summary judgment motion and dismissed plaintiff's due process claims. See Whiting v. Incorporated Village of Old Brookville, 8 F. Supp. 2d 202 (E.D.N.Y. 1998). The court scheduled the remaining claims, one free speech claim and two equal protection claims, for a jury trial on August 18, 1998. On July 20, 1998, the district court denied appellee's motion to amend his complaint to add a breach of contract claim and another due process claim. See Whiting v. Incorporated Village of Old Brookville, 182 F.R.D. 14 (E.D.N.Y. 1998).
 
 
 5
 On August 6, 1998, Lacara moved to be relieved as counsel. In support, he offered an affidavit asserting that appellee "[had] failed to follow legal advice," that appellee "[wa]s not focused on his legal rights," and that appellee "demand[ed] publicity against legal advice." Lacara also asserted that appellee had failed to keep adequate contact with his office, was "not sufficiently thinking clearly to be of assistance at the time of trial," and would "be of little or no help during trial." Furthermore, Lacara stated that appellee had "demand[ed] that [Lacara] argue collateral issues which would not be allowed in evidence," demanded that Lacara continue to argue a due process claim already dismissed by the court, and drafted a Rule 68 Offer without Lacara's consent and demanded that he serve it on defendants. Finally, Lacara asserted that on July 30, 1998, Whiting had entered his office and, without permission, had "commenced to riffle [Lacara's] 'in box.'" Lacara stated that he had to call 911 when Whiting had refused to leave the office. Lacara offered to provide further information to the court in camera. Whiting's responsive affidavit essentially denied Lacara's allegations. Whiting stated that he would not be opposed to an order relieving counsel upon the condition that Lacara's firm refund the legal fees paid by Whiting.
 
 
 6
 On August 13, Judge Spatt denied Lacara's motion to withdraw as counsel. Judge Spatt subsequently issued a written order giving the reasons for denying appellant's motion. See Whiting v. Incorporated Village of Old Brookville, 20 F. Supp. 2d 438 (E.D.N.Y. 1998).
 
 
 7
 On August 13, 1998, Lacara filed a notice of appeal and moved for an emergency stay of the district court's order and to be relieved as appellee's attorney. We granted Lacara's motion for an emergency stay pending appeal but denied his request for relief on the merits at that time. See Whiting v. Lacara, No. 98-9081 (2d Cir. Sept. 10, 1998). At a status conference on September 23, 1998, the district court entertained another motion from Lacara to withdraw as counsel, which Judge Spatt again denied. Lacara filed a timely appeal, which was consolidated with the earlier appeal.
 
 DISCUSSION
 
 8
 a) Appellate Jurisdiction
 
 
 9
 We first discuss whether we have jurisdiction over this appeal. The district court's order denying Lacara's motion to withdraw is neither a final judgment under 28 U.S.C. § 1291 nor an interlocutory order certified under 28 U.S.C. § 1292(b). Thus, we have jurisdiction, if at all, only under the collateral order doctrine, "a narrow exception to the general rule that interlocutory orders are not appealable as a matter of right." Schwartz v. City of New York, 57 F.3d 236, 237 (2d Cir. 1995).
 
 
 10
 The collateral order doctrine "is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430-31 (1985). To fit within the collateral order exception, the interlocutory order must: "[i] conclusively determine the disputed question, [ii] resolve an important issue completely separate from the merits of the action, and [iii] be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).
 
 
 11
 The denial of Lacara's motion to withdraw as counsel satisfies each of the three requirements. An order denying counsel's motion to withdraw "'conclusively determine(s) the disputed question,' because the only issue is whether . . . counsel will . . . continue his representation." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 375-76 (1981) (quoting Coopers & Lybrand, 437 U.S. at 468). Moreover, whether Lacara must continue to serve as appellee's counsel is in the present circumstances an issue completely separate from the merits of the underlying action.
 
 
 12
 Finally, once a final judgment has been entered, the harm to Lacara will be complete, and no relief can be obtained on appeal. Unlike an order granting or denying a motion to disqualify an attorney, which primarily affects the interests of the underlying litigants, see Risjord, 449 U.S. at 376-78 (holding no collateral order jurisdiction over district court's denial of motion for disqualification of counsel because order would be effectively reviewable upon final judgment), an order denying counsel's motion to withdraw primarily affects the counsel forced to continue representing a client against his or her wishes. See Malarkey v. Texaco, Inc., No. 81 Civ. 5224, 1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989) (noting that denying counsel's motion to withdraw "amounts to" requiring "specific performance"). Denial of a motion to withdraw is directly analogous to a denial of immunity or of a double jeopardy claim, which are reviewable under the collateral order doctrine on the ground that having to go through a trial is itself a loss of the right involved. See Mitchell v. Forsyth, 472 U.S. 511, 524-30 (1985) (immunity); Abney v. United States, 431 U.S. 651, 659-62 (1977) (double jeopardy). The injury to a counsel forced to represent a client against his will is similarly irreparable, and the district court's decision would be effectively unreviewable upon final judgment. We therefore have appellate jurisdiction.
 
 
 13
 b) The Merits
 
 
 14
 We review a district court's denial of a motion to withdraw only for abuse of discretion. See, e.g., Fleming v. Harris, 39 F.3d 905, 908 (8th Cir. 1994); Washington v. Sherwin Real Estate, Inc., 694 F.2d 1081, 1087 (7th Cir. 1982). District courts are due considerable deference in decisions not to grant a motion for an attorney's withdrawal. See, e.g., Washington, 694 F.2d at 1087. The trial judge is closest to the parties and the facts, and we are very reluctant to interfere with district judges' management of their very busy dockets.
 
 
 15
 Judge Spatt denied Lacara's motion pursuant to Rule 1.4 of the Civil Rules of the United States District Court for the Southern and Eastern Districts of New York, which provides that
 
 
 16
 [a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.
 
 
 17
 In addressing motions to withdraw as counsel, district courts have typically considered whether "the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel." Brown v. National Survival Games, Inc., No. 91-CV-221, 1994 WL 660533, at *3 (N.D.N.Y. Nov. 18, 1994) (finding that because "[discovery] is not complete and the case is not presently scheduled for trial. . . . granting the instant motion will not likely cause undue delay"); see also Malarkey, 1989 WL 88709, at *2 (denying counsel's motion to withdraw when case is "on the verge of trial readiness"); Rophaiel v. Alken Murray Corp., No. 94 Civ. 9064, 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996) (denying motion to withdraw and noting concern with litigation delay because it would be "too easy for a defendant to stall proceedings by inducing the withdrawal of its attorney by non-payment of fees").
 
 
 18
 Considerations of judicial economy weigh heavily in favor of our giving district judges wide latitude in these situations, but there are some instances in which an attorney representing a plaintiff in a civil case might have to withdraw even at the cost of significant interference with the trial court's management of its calendar. For example, the Code of Professional Responsibility might mandate withdrawal where "the client is bringing the legal action . . . merely for the purpose of harassing or maliciously injuring" the defendant. Model Code of Professional Responsibility ("Model Code") DR 2-110(B)(1); N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.15(b)(1). In such a situation, by denying a counsel's motion to withdraw, even on the eve of trial, a court would be forcing an attorney to violate ethical duties and possibly to be subject to sanctions.
 
 
 19
 Lacara does not claim that he faces mandatory withdrawal. Rather, he asserts three bases for "[p]ermissive withdrawal" under the Model Code: (i) Whiting "[i]nsists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law," Model Code DR 2-110(C)(1)(a); (ii) Whiting's "conduct [has] render[ed] it unreasonably difficult for [Lacara] to carry out employment effectively," DR 2-110(C)(1)(d); and (iii) Whiting has "[d]eliberately disregard[ed] an agreement or obligation to [Lacara] as to expenses or fees," DR 2-110(C)(1)(f). Although the Model Code "was drafted solely for its use in disciplinary proceedings and cannot by itself serve as a basis for granting a [m]otion to withdraw as counsel," we continue to believe that "the Model Code provides guidance for the court as to what constitutes 'good cause' to grant leave to withdraw as counsel." Brown, 1994 WL 660533, at *4 n.1 (citing Armstrong v. McAlpin, 625 F.2d 433, 446 n.26 (2d Cir. 1980), vacated on other grounds, 449 U.S. 1106 (1981)); see also Joseph Brenner Assocs. v. Starmaker Entertainment, Inc., 82 F.3d 55, 57 (2d Cir. 1996) (citing New York implementation of Model Code in affirming district court's decision granting counsel's withdrawal motion). However, a district court has wide latitude to deny a counsel's motion to withdraw, as here, on the eve of trial, where the Model Code merely permits withdrawal.
 
 
 20
 In the instant matter, we would be prepared to affirm if the papers alone were our only guide. Although Lacara has alleged a nonpayment of certain disputed fees, he has not done so with sufficient particularity to satisfy us that withdrawal was justified on the eve of trial. See Rophaiel, 1996 WL 306457, at *1-2 (denying counsel's motion to withdraw based solely on the nonpayment of fees when allegation was not made with sufficient particularity). Moreover, there is nothing in the district court record to suggest error in that court's finding that "Whiting has been very cooperative and desirous of assisting his attorney in this litigation." Whiting, 20 F. Supp. 2d at 439. To be sure, we are concerned by Lacara's allegation that appellee trespassed in his office and that appellant had to call 911 to get Whiting to leave. However, Whiting disputes Lacara's description of these events. Moreover, we strongly agree with the district court that, as the third attorney in this case, Lacara had ample notice that appellee was a difficult client. Id.
 
 
 21
 Nevertheless, we reverse the denial of appellant's motion for withdrawal under Model Code DR 2-110(C)(1)(a). Among Lacara's allegations are that Whiting insisted upon pressing claims already dismissed by the district court and calling witnesses Lacara deemed detrimental to his case. At oral argument, Whiting confirmed Lacara's contention that Whiting intends to dictate how his action is to be pursued. Whiting was asked by a member of the panel:
 
 
 22
 Are you under the impression that if we affirm Judge Spatt's ruling, you will be able to tell Mr. Lacara to make the arguments you want made in this case? . . . [T]hat, if Mr. Lacara says, "That witness doesn't support your case," and you don't agree with that, are you under the impression that if we affirm Judge Spatt's ruling you'll be able to force him to call that witness?
 
 
 23
 To which Whiting replied, "Yes I am."
 
 
 24
 Moreover, in his statements at oral argument, Whiting made it clear that he was as interested in using the litigation to make public his allegations of corruption within the Brookville police department as in advancing his specific legal claims. For example, Whiting thought it relevant to inform us at oral argument that police officers in the department were guilty of "illegal drug use, acceptance of gratuities, [and] ongoing extramarital affairs while they were on duty." Appellee stated that he wanted to call an officer to testify that the officer could not "bring up anything criminal about the lieutenant, the two lieutenants, or the chief, which could get them in trouble or make the department look bad." Finally, Whiting made clear that he disagreed with Lacara about the handling of his case partly because Whiting suspects that Lacara wants to cover up corruption. Appellee stated: "For some strange reason, Mr. Lacara states that he doesn't want to put certain witnesses on the stand. . . . The bottom line is he does not want to make waves and expose all of the corruption that's going on within this community."
 
 
 25
 Also, at oral argument, appellee continued to bring up the already-dismissed due process claims. He asserted: "They found me guilty of something which was investigated by their department on two separate occasions and closed as unfounded on two separate occasions." We thus have good reason to conclude that Whiting will insist that Lacara pursue the already dismissed claims at trial.
 
 
 26
 Finally, appellee indicated that he might sue Lacara if not satisfied that Lacara provided representation as Whiting dictated. After admitting that he did not consider Lacara to be the "right attorney" for him in this case, Whiting asserted that he deemed Lacara "ineffective." The following exchange also occurred:
 
 Question from Panel:
 
 27
 If you think that Mr. Lacara is ineffective in representing you as you stand here now, doesn't Mr. Lacara face the prospect of a . . . malpractice suit, by you, against him, if he continues in the case?
 
 Appellee's Reply:
 
 28
 Yes, I believe he absolutely does.
 
 Question from Panel:
 
 29
 Then, isn't that all the more reason to relieve him? So that what you say is ineffective and is in effect a distortion of the attorney-client relationship, doesn't continue?
 
 Appellee's Reply:
 
 30
 I believe I do have grounds to sue Mr. Lacara for misrepresentation . . . .
 
 
 31
 We believe that appellee's desire both to dictate legal strategies to his counsel and to sue counsel if those strategies are not followed places Lacara in so impossible a situation that he must be permitted to withdraw.
 
 
 32
 Model Code DR 2-110(C)(1)(a) limits the obligations of attorneys to follow their clients' dictates in how to conduct litigation. Attorneys have a duty to the court not to make "legal contentions . . . [un]warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law . . . ." Fed. R. Civ. P. 11(b)(2). We have determined that "an attorney who continues to represent a client despite the inherent conflict of interest in his so doing [due to possible Rule 11 sanctions] risks an ethical violation." Healey v. Chelsea Resources, Ltd., 947 F.2d 611, 623 (2d Cir. 1991) (citing Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1471 (2d Cir. 1988), rev'd on other grounds, 493 U.S. 120 (1989)). In this case, appellee's belief that he can dictate to Lacara how to handle his case and sue him if Lacara declines to follow those dictates leaves Lacara in a position amounting to a functional conflict of interest. If required to continue to represent Whiting, Lacara will have to choose between exposure to a malpractice action or to potential Rule 11 or other sanctions. To be sure, such a malpractice action would have no merit. However, we have no doubt it would be actively pursued, and even frivolous malpractice claims can have substantial collateral consequences.
 
 
 33
 As previously noted, the interest of the district court in preventing counsel from withdrawing on the eve of trial is substantial. Moreover, we would normally be loath to allow an attorney to withdraw on the eve of trial when the attorney had as much notice as did Lacara that he was taking on a difficult client. However, the functional conflict of interest developed at oral argument causes us to conclude that the motion to withdraw should be granted.
 
 
 34
 We therefore reverse and order the district court to grant appellant's motion to withdraw as counsel. We note that Lacara agreed in this court to waive all outstanding fees and to turn over all pertinent files to Whiting.
 
 
 
 NOTES:
 
 
 [1]
 Defendants take no position on this appeal.