**Jere EATON, Plaintiff,**

v.

**The COCA–COLA COMPANY, Defendant.**

**No. 3:06CV01664 (DJS).**

United States District Court, D. Connecticut.

Aug. 10, 2009.

Deborah L. McKenna, Gary Edward Phelan, Stephanie M. Marnin, Tara L. Quinlan, Outten & Golden, Stamford, CT, for Plaintiff.

Elizabeth Finn Johnson, The Coca Cola Co., Atlanta, GA, Francis J. Brady, Murtha Cullina LLP, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Jere Eaton, brings this action against the defendant, the Coca–Cola Company ("the Defendant"), alleging that the Defendant discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. §§ 46a–60 *et seq.* ("CFEPA"). The Defendant has moved for summary judgment, which is currently pending before the Court.

At issue now is the Defendant's motion to vacate. The relevant background of this motion is as follows. On April 24, 2009, the Defendant's then-attorneys from Proskauer Rose LLP ("Proskauer") moved to withdraw as counsel for the Defendant. The Defendant and Proskauer both seem to agree that Proskauer represented the Defendant in this case because of Attorney Elise M. Bloom ("Attorney Bloom"). Attorney Bloom was retained by the Defendant to act as its counsel of record while she was a partner at the firm of Jackson Lewis LLP. Attorney Bloom represented the Defendant in the administrative proceedings that preceded the filing of this lawsuit. In May 2006, Attorney Bloom left Jackson Lewis LLP to join Proskauer, and

she brought with her this case, apparently with the Defendant's consent, although there does not seem to have been any written consent agreement.

Proskauer states that one if its partners, Louis M. Solomon, has represented Pepsi-Co, Inc. ("Pepsi") for many years, and, in that capacity, has acted adversely to the Defendant. On April 12, 2009, while the case before this Court was still pending, Proskauer commenced a false advertising action on behalf of a Pepsi subsidiary against the Defendant in the United States District Court for the Southern District of New York ("the New York Action"). The Defendant then objected to Proskauer's involvement in the New York Action, claiming that Proskauer's representation of Pepsi violated the New York Rules of Professional Conduct. The Defendant thus demanded that Proskauer withdraw its representation in the New York Action.

There was a series of exchanges between representatives of the Defendant and Proskauer. The Court need not go into great detail with regard to these exchanges; however, the Defendant did inform Proskauer of its intention to pursue disciplinary charges against Proskauer if Proskauer did not withdraw from the New York Action. In addition, there was a hearing held before the Honorable John G. Koeltl, to whom the New York Action was assigned. Eventually, Proskauer withdrew from the New York Action and was replaced by substitute counsel. Proskauer also, however, desired to withdraw from this case, and filed a motion to withdraw on April 24, 2009. (*See* dkt. # 57.) On May 7, 2009, before the Defendant filed any objection to the motion, the Court granted Proskauer's motion and ordered the Defendant to obtain new counsel on or before June 8, 2009. (Dkt. # 58.)

The Defendant now asks the Court to reconsider and vacate its May 7, 2009 Order. According to the Defendant, Proskauer has not demonstrated good cause to withdraw as counsel. The Defendant maintains that it would be severely prejudiced by Proskauer's withdrawal because Proskauer (or, at least, Attorney Bloom) has represented the Defendant in this case since its inception. The Defendant asserts that Proskauer is attempting to drop it "like a hot potato" in order to "keep happy a far more lucrative client." Proskauer, for its part, argues that its relationship with the Defendant is irrevocably broken, as evidenced by the correspondence between the Defendant and Proskauer wherein the Defendant threatened to refer Proskauer to a disciplinary committee. In light of the above, the Court agrees to reconsider its order allowing Proskauer to withdraw.[1] Nonetheless, upon reconsideration, the Court is not persuaded by the Defendant's arguments, and declines to vacate its prior decision.

 The Local Civil Rules of the United States District Court for the District of Connecticut provide the following:

> Withdrawal of appearances may be accomplished only by leave of Court on motion duly noticed, and normally shall not be granted except upon a showing that other counsel has appeared or that the party has elected to proceed pro se, and that the party whose counsel seeks to withdraw has received actual notice by personal service or by certified mail of the motion to withdraw. In cases where the party has failed to engage other counsel or file a pro se appearance, where good cause exists for per-

---

**1.** On August 5, 2009, the Court held a telephonic conference with representatives from the Defendant and Proskauer on this issue.

mitting the withdrawal by the appearing counsel, the Court may grant the motion to withdraw the appearance after notice to the party that failure to either engage successor counsel or file a pro se appearance will result in the granting of the motion to withdraw and may result in a dismissal or default being entered against the party.

D. Conn. L. Civ. R. 7(e). The Court "has a great deal of discretion in deciding a motion for withdrawal of counsel." *Vachula v. General Elec. Capital Corp.*, 199 F.R.D. 454, 457 (D.Conn.2000) (citing *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir.1999)).

"As a first step in considering counsel's request, the court looks to the Rules of Professional Conduct as approved by the Judges of the Connecticut Superior Court ... to determine whether withdrawal is permissive or mandatory given the facts presented." *Id.* (internal citation omitted). Rule 1.16(a) of the Rules of Professional Conduct provides that withdrawal is mandatory where the representation will result in the violation of the Rules of Professional Conduct or other law; the lawyer's physical or mental condition materially impairs his ability to represent the client; or the lawyer is discharged. Rule 1.16(b) of the Rules of Professional Conduct provides that a lawyer may withdrawal where, *inter alia*, good cause for withdrawal exists.

■ At the outset, it probably was not a good idea for Proskauer to agree to represent the Defendant in this matter. The Defendant and Pepsi are ardent rivals, and presumably not strangers to engaging each other in litigation. It is unclear to the Court why Proskauer would agree to represent a fierce rival of one of its long-standing clients, nor does the Court see why the Defendant would consent to such representation. The Court does not know why neither the Defendant nor Proskauer avoided this situation, given the potential conflicts of interest involved. Although the Court tends to quote case law rather than Scripture, a Biblical admonition seems particularly appropriate here: "No one can serve two masters. He will either hate one and love the other, or be devoted to one and despise the other." *Matthew* 6:24.[2]

That being said, the Court, whose hindsight is 20/20, does not wish to be overly harsh. The Court realizes that there were advantages to the Defendant in having the lawyer from the underlying administrative proceedings also represent it in the lawsuit. In addition, Proskauer presumably did not foresee much of a problem in representing the Defendant one time for a relatively ordinary (in a legal sense) Title VII/CFEPA case.[3]

Given the above, the Court believes that there is good cause for Proskauer to withdraw. The Defendant's contention that Proskauer is attempting to drop it "like a hot potato" in order to "keep happy a far more lucrative client" is unpersuasive. From what the Court can discern, Proskauer's representation of the Defendant in this matter, which spans approximately three years, has been nothing but entirely professional and competent. Proskauer,

---

**2.** Obviously, this quote is not obligatory in the legal context, and a firm lawfully can represent more than one "master" (i.e., client). Nonetheless, because the representation of two clients whose interests are adverse to each other can raise serious problems, firms should strive to avoid such a situation.

**3.** Of course, this case is very significant to the Plaintiff, and the Court does not intend to demean her or imply that her case has no merit. The Court is simply pointing out that, although the facts of each case are different, the law involved in this specific case is fairly well-established.

now realizing the potential conflicts at issue, is now attempting to remedy the situation.

In the Court's view, this is not a circumstance where Proskauer is dropping a individual client with little money in favor of some wealthy company with deep pockets (a scenario to which, in the Court's opinion, the "hot potato"/"lucrative client" analysis is more appropriately applied). Both the Defendant and Pepsi are multi-billion dollar corporations with a global presence. Stating that one is more lucrative than the other does not make a convincing argument. Moreover, Pepsi, not the Defendant, was Proskauer's client first. The "hot potato"/"lucrative client" analysis seems to be more aptly applied in situations where firms drop older clients in favor newer, more profitable clients, not where firms are attempting to salvage their relationships with long-standing clients.

In addition, the Court finds more credible Proskauer's position that its relationship with the Defendant is irrevocably broken. The Defendant states that it is not. Of course, the fact that, on the one hand the Defendant asserts that the relationship is fine, while on the other hand Proskauer asserts that the relationship has failed, is itself evidence that there is at least some breakdown in the relationship. The submissions to the Court show that the Defendant more than once threatened to report its own lawyers to a disciplinary authority for ethical violations. Yet, now the Defendant wants to force Proskauer to remain in this case, apparently no longer concerned about Proskauer's ethics or Proskauer's continued representation of Pepsi. The Defendant also, in at least one case (the New York Action), has used its position as Proskauer's client to prevent Proskauer from representing Pepsi, a client with whom Proskauer has a more established

relationship. The Court sees these events as evidencing a breakdown in the attorney/client relationship.

Moreover, the Court is unpersuaded by the Defendant's argument that it would be greatly prejudiced by having to retain new counsel. The Court does not doubt that the Defendant will be able to retain one of the myriad of law firms that would eagerly represent such a prominent company. Additionally, given the current status of the litigation, any new firm the Defendant retains will have ample opportunity to familiarize itself with this case. Currently pending before the Court is a fully-briefed summary judgment motion. There is no deadline pressing on either of the parties at this time. In the Court's view, the Defendant's inconvenience in hiring new counsel does not rise to the level of undue prejudice.

The Court shall, however, provide the Defendant's new counsel with time to review the summary judgment submissions from Proskauer. If the new firm wishes to make any additional summary judgment arguments, it may do so. Although the Court believes that the summary judgment submissions from Proskauer are complete, the Court thinks it only fair and proper to allow a new firm to review Proskauer's work before affixing its imprimatur on, and adopting, that work.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to vacate (**dkt. # 61**) is **DENIED.** The Defendant shall obtain new counsel, who must file an appearance in this case on or before August 31, 2009. If the Defendant's new counsel wishes to file a supplement to the summary judgment materials submitted by Proskauer Rose LLP, the new counsel must do so on or

before September 28, 2009.[4] If the Defendant's new counsel files a supplemental brief, the Plaintiff may file a response to the supplemental brief on or before October 19, 2009.

4. If, however, this new counsel opts not to file any additional summary judgment materials, the Court would ask for notification of such as soon as possible so that it may continue working on a decision for the pending summary judgment motion without waiting for the deadline to pass.