*CFPB v. Blust Family 2019 Irrevocable Tr.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of March, two thousand twenty-six.

PRESENT:
>    REENA RAGGI,
>    SUSAN L. CARNEY,
>    BETH ROBINSON,
>        *Circuit Judges*.

_____

CONSUMER FINANCIAL PROTECTION BUREAU, THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, STATE OF COLORADO, EX REL. PHILIP J. WEISER, ATTORNEY GENERAL, STATE OF DELAWARE, EX REL. KATHLEEN JENNINGS, ATTORNEY GENERAL, STATE OF DELAWARE, THE PEOPLE OF THE STATE OF ILLINOIS, THROUGH ATTORNEY GENERAL KWAME RAOUL, THE STATE OF MINNESOTA, BY ITS ATTORNEY GENERAL KEITH ELLISON, THE STATE OF NORTH CAROLINA, EX REL. JOSHUA H. STEIN, ATTORNEY GENERAL, THE STATE OF WISCONSIN,

>    *Plaintiffs-Appellees*,

v.                                                                    No. 24-1541

THOMAS W. MCNAMARA,

    *Receiver-Appellee*,

    v.

THE BLUST FAMILY 2019 IRREVOCABLE TRUST THROUGH PAUL HULL, JR., TRUSTEE, Relief Defendant,

    *Defendant-Appellant*,

STRATFS, LLC, FKA STRATEGIC FINANCIAL SOLUTIONS, LLC, STRATEGIC CLIENT SUPPORT, LLC, FKA PIONEER CLIENT SERVICES, LLC, STRATEGIC CS, LLC, STRATEGIC FS BUFFALO, LLC, STRATEGIC NYC, LLC, BCF CAPITAL, LLC, T FIN, LLC, STRATEGIC CONSULTING, LLC, VERSARA LENDING, LLC, STRATEGIC FAMILY, INC., ANCHOR CLIENT SERVICES, LLC., NKA CS 1 PAAS SERVICES, LLC, BEDROCK CLIENT SERVICES, LLC, BOULDER CLIENT SERVICES, LLC, CANYON CLIENT SERVICES, LLC, CAROLINA CLIENT SERVICES, LLC, GREAT LAKES CLIENT SERVICES, LLC, GUIDESTONE CLIENT SERVICES, LLC, HARBOR CLIENT SERVICES, LLC, HEARTLAND CLIENT SERVICES, LLC, MONARCH CLIENT SERVICES, LLC, NKA CS 2 PAAS SERVICES, LLC, NEWPORT CLIENT SERVICES, LLC, NORTHSTAR CLIENT SERVICES, LLC, OPTION 1 CLIENT SERVICES, LLC, PIONEER CLIENT SERVICING, LLC, ROCKWELL CLIENT SERVICES, LLC, ROYAL CLIENT SERVICES, LLC, STONEPOINT CLIENT SERVICES, LLC, SUMMIT CLIENT SERVICES, LLC, NKA CS 3 PAAS SERVICES, LLC, WHITESTONE CLIENT SERVICES, LLC, RYAN SASSON, JASON BLUST, JOHN DOES 1–50, DANIEL BLUMKIN, Relief Defendant, ALBERT IAN BEHAR, Relief Defendant, STRATEGIC ESOP, Relief Defendant, STRATEGIC ESOT, Relief Defendant, TWIST FINANCIAL, LLC, Relief Defendant, DUKE ENTERPRISES, LLC, Relief Defendant, BLAISE INVESTMENTS, LLC, Relief Defendant, JACLYN BLUST, Relief

Defendant, LIT DEF STRATEGIES, LLC, Relief
Defendant, RELIALIT, LLC, Relief Defendant, CLEAR CREEK
LEGAL, LLC, CREDIT ADVOCATES LAW FIRM, LLC, GREENSTONE
LEGAL GROUP, BRADON ELLIS LAW FIRM LLC, HAILSTONE
LEGAL GROUP, HALLOCK AND ASSOCIATES, HARBOR LEGAL
GROUP, ANCHOR LAW FIRM, PLLC, BEDROCK LEGAL
GROUP, BOULDER LEGAL GROUP, CANYON LEGAL GROUP,
LLC, GREAT LAKES LAW FIRM, HEARTLAND LEGAL
GROUP, LEVEL ONE LAW, MEADOWBROOK LEGAL
GROUP, MONARCH LEGAL GROUP, NEWPORT LEGAL GROUP,
LLC, NORTHSTAR LEGAL GROUP, OPTION 1 LEGAL, PIONEER
LAW FIRM P.C., ROCKWELL LEGAL GROUP, SPRING LEGAL
GROUP, ROYAL LEGAL GROUP, SLATE LEGAL
GROUP, STONEPOINT LEGAL GROUP, THE LAW FIRM OF DEREK
WILLIAMS, LLC, WHITSTONE LEGAL GROUP, WYOLAW,
LLC, CHINN LEGAL GROUP, LLC, LEIGH LEGAL GROUP,
PLLC, HALLOCK & ASSOCIATES LLC, GUSTAFSON CONSUMER
LAW GROUP, LLC, MICHEL LAW, LLC, THE LAW OFFICE OF
MELISSA MICHEL LLC, MOORE LEGAL GROUP, LLC,

> *Defendants*,

CIBC BANK USA, VALLEY NATIONAL BANK,

> *Intervenors*.[*]

_____

| | |
|---|---|
| FOR APPELLEE STATE OF NEW YORK: | SARAH L. ROSENBLUTH, Assistant Solicitor General (Barbara Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia |

_____

[*] The Clerk's office is respectfully directed to amend the caption as reflected above.

|  |  |
|---|---|
|  | James, Attorney General of the State of New York, Buffalo, NY |
| FOR APPELLEE CONSUMER FINANCIAL PROTECTION BUREAU: | Christopher Deal, Deputy General Counsel, Joseph Frisone, Senior Counsel, Washington, D.C. |
| FOR APPELLEE STATE OF COLORADO: | Kevin J. Burns, Senior Assistant Attorney General, *for* Phillip J. Weiser, Attorney General of the State of Colorado, Denver, CO |
| FOR APPELLEE STATE OF DELAWARE: | Maryanne Donaghy, Deputy Attorney General, *for* Kathleen Jennings, Attorney General of the State of Delaware, Wilmington, DE |
| FOR APPELLEE STATE OF ILLINOIS: | Anna Gottlieb, Assistant Attorney General, *for* Kwame Raoul, Attorney General of the State of Illinois, Chicago, IL |
| FOR APPELLEE STATE OF MINNESOTA: | Evan Romanoff, Assistant Attorney General, *for* Keith Ellison, Attorney General of the State of Minnesota, St. Paul, MN |
| FOR APPELLEE STATE OF NORTH CAROLINA: | M. Lynne Weaver, Special Deputy Attorney General, *for* Jeff Jackson, Attorney General of the State of North Carolina, Raleigh, NC |
| FOR APPELLEE STATE OF WISCONSIN: | Lewis W. Beilin, Assistant Attorney General, *for* Joshua L. Kaul, Attorney General of the State of Wisconsin, Madison, WI |

| | |
|---|---|
| FOR RECEIVER-APPELLEE THOMAS W. MCNAMARA | James C. Thoman, Hodgson Russ LLP, Buffalo, NY |
| FOR DEFENDANT-APPELLANT: | EVAN K. FARBER (Noah Weingarten, *on the brief*), Loeb & Loeb LLP, New York, NY. |

Appeal from orders of the United States District Court for the Western District of New York (Roemer, *Magistrate Judge*).[1]

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' motion to dismiss this appeal of the district court's May 7, 2024 order denying the Blust Family 2019 Irrevocable Trust's (the "Trust's") motion to modify and of its May 22, 2024 order approving the receiver's first application for fees and expenses is **GRANTED**. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

Strategic Financial Services operates a debt-relief business through an intricate network of subsidiaries and law firms. The Consumer Financial Protection Bureau (CFPB) and the States of New York, Colorado, Delaware,

---

[1] All pre-trial matters were referred to Magistrate Judge Roemer. Pursuant to 28 U.S.C. § 636(c), the parties consented to Magistrate Judge Roemer deciding the preliminary injunction motion.

Illinois, Minnesota, North Carolina, and Wisconsin (collectively, "Plaintiffs") sued Strategic Financial Solutions, its client subsidiaries, and individual defendants Ryan Sasson and Jason Blust (collectively, "Defendants"), alleging that their marketing and sale of debt relief violated the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c), 6105(d); the Telemarketing Sales Rule (TSR), 16 C.F.R. § 310.1 *et seq.*; the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5536(a), 5564, 5565; and various state laws. The suit primarily alleges that Defendants (1) collect illegal advance fees from consumers before doing anything to settle or reduce their debts and (2) charge large fees out of proportion to the amount of debt or the benefit to the consumer.

As to individual defendant Jason Blust, Plaintiffs allege that he created webs of "façade law firms," which "perform little to no work on behalf of consumers," and "shell companies and consulting firms that funnel money" into his own pockets. App'x 113. They further allege that Blust paid $36 million into the Trust via his company Lit Def Strategies—one of Blust's "consulting firms" which facilitated Blust's exercise of "managerial responsibility" over the façade law firms, App'x 1263—between March 2020 and April 2021, and that the Trust then paid $8.3 million to Jaclyn Blust within that same time period. Thus, the suit

names the Trust as one of several Relief Defendants, alleging that it "received . . . funds and other assets from [Jason Blust and other Defendants] that are traceable to funds obtained from consumers through . . . unlawful practices." *Id.* at 152.

The district court granted a preliminary injunction to Plaintiffs after an evidentiary hearing, determining that they had made a preliminary showing that the debt relief scheme collected illegal fees. *Consumer Financial Protection Bureau v. StratFS, LLC*, No. 24-cv-40, 2024 WL 911518, at *1 (W.D.N.Y. Mar. 4, 2024) ("*CFPB I*"). The court froze the assets of Defendants and Relief Defendants and placed certain Defendants and Relief Defendants, including the Trust, under the control of a receiver to "assist" the court, "ensure compliance with its order," "disentangle the companies and bank accounts," and "protect consumers" enrolled in the debt relief program. *Id.* at *24–25.

The Trust joined the other Defendants and Relief Defendants in appealing this preliminary injunction. This Court upheld the injunction in full. *Consumer Financial Protection Bureau v. Sasson*, No. 24-697, 2025 WL 1554514 (2d Cir. June 2, 2025) (summary order) ("*CFPB II*").

While that appeal was pending, the Trust moved purportedly to "modify" the preliminary injunction to prevent the receiver from transferring or spending any Trust funds and asked the court to unfreeze the Trust's assets to allow it to pay its counsel on an ongoing basis without having to seek approval from Plaintiffs. The court determined that the Trust was properly subject to the receivership and had failed to show that modification of the injunction was warranted. *Consumer Financial Protection Bureau v. StratFS, LLC*, No. 24-cv-40, 2024 WL 2020327, at *3–4 (W.D.N.Y. May 7, 2024) ("*CFPB III*"). As to the Trust's attorney's fees, the court declined to unfreeze the Trust's assets and instead directed the Trust to submit redacted billing invoices from its counsel to Plaintiffs to substantiate its request for further payment of counsel. *Id.* at *4–5.

Soon after, the court granted the receiver's first fee application, which the Trust had opposed only to the extent that Trust assets would be used to pay the receiver's fees and expenses. *Consumer Financial Protection Bureau v. StratFS, LLC*, No. 24-cv-40, 2024 WL 2315291, at *1 n.1, 5 (W.D.N.Y. May 22, 2024) ("*CFPB IV*").

On appeal from those two orders, the Trust asks us to remove its assets from the receivership estate, to prohibit the Receiver from using the Trust's assets for the payment of receivership expenses, and to unfreeze its assets "to the extent

8

necessary to pay [its own counsel] on an ongoing basis" without the need to submit redacted billing statements to Plaintiffs. Appellant's Br. at 42. Plaintiffs oppose these requests and move to dismiss the appeal for lack of appellate jurisdiction.

Under 28 U.S.C. § 1292(a)(1), we have jurisdiction to review interlocutory orders "refusing to dissolve or modify injunctions." We agree with Plaintiffs that "we do not inquire into the validity of the underlying preliminary injunction on a motion to modify." *Weight Watchers International, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 142 (2d Cir. 2005).[2] Although "[r]efusals of explicit motions to modify . . . injunctions are readily appealed," review of a denial of a motion to modify is not a vehicle "simply to revisit the initial injunction decision or resurrect an expired time for appeal." 16 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3924.2 (3d ed. 2002, updated Sept. 2025).

The Trust's motion is best understood as an attempt to relitigate the issuance of the original preliminary injunction, and we therefore lack jurisdiction over this appeal of the district court's denial of the motion. The Trust's objection to the

---

[2] In quotations from caselaw, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

placement of its assets into receivership is a challenge it already raised—and lost—in its appeal of the preliminary injunction: then, as now, it argued that the district court lacked the authority and the evidentiary basis to include the Trust's assets within the asset freeze and receivership, but this Court rejected those arguments. *See CFPB II*, 2025 WL 1554514, at *2; *compare* Appellant's Br. at 3–4, 18, 25–31, *with CFPB II*, No. 24-697, Appellants' Br., Dkt. No. 162 at 54–62. In other words, in this respect the Trust is seeking "simply to revisit the initial injunction decision," a request we lack jurisdiction to entertain. 16 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3924.2 (3d ed. 2002, updated Sept. 2025).

The Trust's objection to the use of receivership assets to pay receivership expenses, the "primary issue" in this appeal, fares no better. Appellant's Br. at 1. The authority to pay receivership expenses—including expenses incurred operating Relief Defendants' businesses—with receivership assets was a prominent part of the preliminary injunction, *see* App'x 871–75, 883–84, and is a standard aspect of receiverships generally, *see* 65 Am. Jur. 2d Receivers § 152 (2d ed. 1962, updated Feb. 2026). The Trust's argument, in essence, is that the district court lacked the authority to issue equitable relief with respect to funds beyond those that are necessary to satisfy a potential future judgment—one consequence

of which is that the court erred in authorizing the Receiver to spend receivership assets on receivership expenses, thereby making those assets unavailable to satisfy a future judgment.  But this argument too is simply an argument that the district court erred when it originally granted the injunction, and on a motion to modify, "we do not inquire into the validity of the underlying preliminary injunction." *Weight Watchers International, Inc.*, 423 F.3d at 142.[3]

The Trust points to two developments it says confirm that it is seeking (and the district court denied) modification—and not merely reconsideration—of the initial injunction, but neither bears any rational connection to the arguments the Trust raises, or the modifications it seeks.  The Trust first argues that the fact that Plaintiffs' original complaint incorrectly named a prior Trustee of the Trust rather than its current one obscured the "independence" of the current Trustee, which "undermines the entire purpose of extending the Receivership over the Trust."

---

[3] Indeed, while this receivership-expenses argument was not raised in the initial preliminary injunction appeal, it is largely derivative of the arguments against the asset freeze that *were* raised in opposing the imposition of a preliminary injunction in the first instance.  *Compare* Appellant's Br. at 17 ("[T]he District Court lacked jurisdiction to order a relief defendant's funds be used to pay an amount that is more than necessary to satisfy a potential future judgment."), *with CFPB II*, No. 24-697, Appellants' Br., Dkt. No. 162 at 55 ("[T]he scope of an asset freeze must be rationally related to the plaintiff's potential recovery.").  The Trust's arguments then and now simply highlight different implications of its understanding of the scope of equitable authority.  *Compare* Appellant's Br. at 26–29, *with CFPB II*, No. 24-697, Appellants' Br., Dkt. No. 162 at 54–59.

11

Appellant's Mot. to Dismiss Resp. at 16. But the Trust does not explain why incorrectly identifying the *name* of the Trustee bears at all on the *independence* of the Trustee or why the independence of the Trustee was unknown to the district court when it issued the initial injunction.

Second, the Trust makes much of the fact that the Receiver opened the receivership bank account in San Diego, California, not within the Western District of New York as the temporary restraining order and preliminary injunction required. But that error bears no relationship to the propriety of the receivership itself (and its attendant receivership-expenses authority)—what the Trust challenges in this appeal—as opposed to the compliance record of the particular Receiver currently serving in that role. Thus, regardless of the merits of the Trust's contentions, it has not shown that these facts, even on their face, transform its request for reconsideration into one for modification.

Finally, the Trust argues that the district court actually modified the preliminary injunction by creating a new procedure for releasing Trust assets to pay the Trust's attorney's fees and that its order is appealable in at least that respect.

We disagree that the district court ordered a modification.  Rather than imposing a particular procedure to which the parties would be required to conform for future funds releases, the court instead "f[ound] this to be an issue that can, and should, be worked out between counsel for plaintiffs and counsel for the Trust."  *CFPB III*, 2024 WL 2020327, at *5 n.4.  While the district court "directed" the Trust to "provide redacted invoices" to Plaintiffs, *id.* at *5, we understand that directive as given in the context of the particular $100,000 release request at issue[4] and as intended to facilitate the parties' reaching a mutual agreement as to the procedure that will govern future requests.[5]

We accordingly lack appellate jurisdiction under Section 1292(a)(1) over any component of the Trust's appeal.

We find the Trust's three alternative proposed bases for appellate jurisdiction unpersuasive.  First, the Trust does not identify any authority supporting its contention that the arguments it raises in this appeal are of the same

---

[4] To the extent that any modification with respect to this request would otherwise be appealable, that issue is now moot, as the parties have since reached agreement on that request and additional funds have been released to pay counsel.

[5] The Trust also appeals the district court's grant of the receiver's first application for fees and expenses.  But it does not argue that this grant is independently appealable on an interlocutory basis if we lack jurisdiction over its appeal of the modification decision (as we conclude we do).  Accordingly, we decline to exercise jurisdiction over this component of the Trust's appeal.

force or nature as challenges to a district court's subject-matter jurisdiction. Nor does it explain why, even were it so, its appeal would not still be subject to other jurisdictional limits, such as those imposed by Section 1292(a)(1).

Second, the collateral order doctrine does not apply here: the aspects of the preliminary injunction the Trust is challenging would not "be effectively unreviewable on appeal from a final judgment" because the Trust had the opportunity to appeal them in its appeal of the preliminary injunction. *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999). The collateral order doctrine is intended to permit the appeal of significant and otherwise unappealable issues, not to enable the re-litigation of already appealable issues. *See Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). Third, because the Trust had the opportunity to raise its current objections in the previous appeal, mandamus relief is also not warranted. *See United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 237 (2d Cir. 2016) (requiring that "the party seeking issuance of the writ . . . have no other adequate means to attain the relief it desires").

\* \* \*

For the reasons above, Plaintiffs' Motion to Dismiss is **GRANTED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court