55 A.3d 713

**In the Matter of the Motion of Frederick R. FRANKE, Jr., to Withdraw Representation.**

**No. 2577, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Aug. 29, 2012.

Frederick R. Franke, Jr., Annapolis, MD, for appellant.

Raymon K. Nelson (pro se), Edgewater, MD, for appellee.

Panel: KRAUSER, C.J., WRIGHT and AUDREY J.S. CARRION (Specially Assigned), JJ.

KRAUSER, C.J.

The principal issue before us is whether an attorney may file an interlocutory appeal when his motion to withdraw as counsel has been denied. The attorney is Frederick R.

Franke, Jr. Franke was retained by Raymon K. Nelson, M.D. ("Raymon"), to represent Raymon in his capacity as the trustee of the Trust of his late brother, Ralph L. Nelson, M.D. ("Ralph, Sr."). The beneficiaries of the Trust are Ralph, Sr.'s wife, Myra Nelson ("Myra"), and his son, Ralph L. Nelson, Jr. ("Ralph, Jr.").

When Myra filed a petition in the Circuit Court for Anne Arundel County, seeking, among other things, the appointment of a co-trustee, because Raymon had purportedly mismanaged the Trust, Raymon hired Franke to represent him in this matter. After paying Franke a retainer and, later, as the case progressed, additional legal fees, Raymon reimbursed himself, with funds from the Trust, relying on provisions of the Trust Agreement that purportedly permitted him to do so.[1]

After discovery had advanced, Myra, together with Ralph, Jr., who had been added as a party, amended what had become their joint petition to demand that Raymon be removed as trustee, that a trustee be appointed in Raymon's place, and that he be required to pay damages for misappropriation of Trust funds. Granting that request in part, the circuit court removed Raymon as trustee, replacing him with an interim trustee.

By that time, Raymon owed Franke more than $120,000 in legal fees. Unable to draw funds from the Trust, as a result of his removal as trustee, Raymon made no further payments to Franke though Franke continued to represent him in this matter.

---

1. The "Twelfth" section of the Trust Agreement provides, among other things, that trustees "may pay to themselves reasonable compensation for their services" and that any trustee "shall be reimbursed in full from the trust property for any loss or expense incurred or suffered as a result of being or acting as a Trustee, excluding only such loss or expense resulting from his or her own willful default or acts in bad faith." The "Eighteenth" section of that Agreement provides, among other things, that a trustee has the power to "employ and compensate attorneys ... without liability for neglect or wrongdoing of any of them selected with reasonable care."

About two months before trial, Franke notified Raymon that, largely because of Raymon's failure to pay any pending or projected legal fees and costs, he intended to file a motion to withdraw as Raymon's counsel. The motion was first granted by one judge and then denied by another. From the ultimate denial of that motion, Franke noted this appeal, claiming that, in refusing to grant his motion to withdraw, the court had abused its discretion and that, under the collateral order doctrine, that ruling was an appealable order. Then, pending the resolution of this appeal, at the request of Franke and with no opposition from Myra and Ralph, Jr., the circuit court stayed these proceedings indefinitely.

Because we hold that the circuit court's order rejecting Franke's request to withdraw is appealable under the collateral order doctrine and that the circuit court abused its discretion in so ruling, we vacate the circuit court's order and direct that court to grant Franke's request to withdraw as counsel for Raymon.

## Background

When, in 2004, Ralph, Sr., discovered that he was suffering from a rare and lethal form of cancer, he established, with the assistance of counsel, a trust (the "Trust") to receive the assets of his estate for the benefit of his wife, Myra, and his son, Ralph, Jr. He named as co-trustees his brother, Raymon, and himself. But, following the death of Ralph, Sr., later that year, Raymon became the sole trustee of the Trust.

Between 2005 and the spring of 2008, relations between the decedent's wife and brother deteriorated, because of, among other things, Raymon's substantial delays in, or perhaps avoidance of, communicating essential information regarding the financial condition of the Trust, to her. It was not until January 2008, Myra claims, that Raymon provided her with an accounting of the Trust for 2005. That accounting stated that the Trust had a balance of $2,556,702.09, as of the beginning of that year. Four months later, pressed by Myra to provide further information, Raymon supplied her with an accounting of the Trust's assets for 2006, but not for 2007. Then, as a

result of an additional document provided by Raymon, Myra learned that the Trust's assets had declined in value from $2,556,702.09 to approximately $1,610,000 as of June 2008, a loss of $946,702.

Suspecting that Raymon was misappropriating Trust funds, Myra filed a petition in the Anne Arundel County circuit court, requesting that the circuit court assume jurisdiction over the Trust; order an accounting of the Trust's assets; prohibit Raymon "from spending any Trust funds for any purpose" other than to provide a monthly allowance to Myra; require Raymon to show cause why he should not be removed as trustee; and appoint a co-trustee. Several weeks later, Raymon hired Franke to represent him, paying him a $10,000 retainer, and later, as the case progressed, at least $24,437.39 in additional legal fees. Raymon then reimbursed himself, for the fees he had paid Franke, with funds from the Trust.[2]

A second amended petition, filed by Myra and Ralph, Jr., requested that the court immediately remove Raymon as trustee and appoint, in his place, Myra's cousin "or some other suitable individual" as trustee, as well as a demand for damages of $1,500,000 for fraudulent misappropriation and intentional dissipation of Trust funds. Four months later, Myra and Ralph, Jr., filed a motion for a preliminary injunction, requesting that Raymon be enjoined from reimbursing himself with monies from the Trust. Judge Pamela L. North, who had been specially assigned to the case, removed Raymon as trustee and appointed, in his stead, Myra's cousin as interim trustee.

Trial on the remaining claims, relating to Raymon's purported misappropriation of Trust assets, was scheduled for February 2, 2010. Two months before that date, Franke sent a

---

**2.** To establish his right to use the Trust's assets to repay himself for the legal fees he had expended, Raymon cites the "Twelfth" and "Eighteenth" sections of the Trust Agreement, which purportedly permit such expenditures by the trustee, unless, as the former of those two sections put it, the expense for which reimbursement is sought is a product of the trustee's "own willful default or acts in bad faith."

letter to Raymon, notifying him of Franke's intent to file a motion to withdraw as his counsel. Almost two weeks after that, Franke filed a motion to withdraw his appearance, hand-delivering a courtesy copy to Judge North.

In that motion, Franke stated that he was owed more than $120,000 in legal fees; that he had, nonetheless, continued representing Raymon "because of the potential prejudice" that might have occurred "with discovery still outstanding and with a hearing set for a Motion for a Preliminary Injunction"; that "since the ruling on the Preliminary Injunction," he had "overseen the turnover of trustee responsibilities" to the interim trustee and had "undertaken efforts to settle the matter" to no avail; that he had served Raymon with notice, as required by the Maryland rules; and that trial was scheduled "two months from the notice of intention to withdraw." There were, he suggested, "other reasons for the withdrawal" and that those reasons had "created a conflict making continued representation problematic."

Raymon opposed the motion, contending that "at this late stage in the matter, having completed discovery and other trial preparation work," and with trial to begin in five weeks, he "would likely sustain irreparable harm and an unfair trial if Counsel were to withdraw." Any conflicts between himself and Franke were, he claimed, "financially based."

Although the instant case had been specially assigned to Judge North, Franke's motion was, for some unknown reason, presented to a different circuit court judge: Judge Paul A. Hackner. After Judge Hackner granted the motion, the Clerk of the Circuit Court sent notice to Raymon, advising him that his "failure to have new counsel enter his appearance" within fifteen days after service of the notice "shall not be grounds for postponing any further proceedings, concerning the case."

But, seven days later, Judge Hackner "withdrew" his order, stating that, because the case had been specially assigned to Judge North, it was she, not he, who should have been given the withdrawal motion to decide. The effect of this ruling was to re-instate Franke's representation of Raymon, leaving his

motion to withdraw still pending. Then, Judge North denied the motion, without elaboration.

After noting an appeal from that ruling, Franke filed a motion in the circuit court to stay proceedings pending that appeal. In their response to that motion, Myra and Ralph, Jr., stated that they were "not opposed" to a stay, and Judge North thereafter granted that motion, staying all proceedings in this matter.

## Discussion

### I.

 We begin by addressing an issue of first impression in Maryland, that is, whether we may consider, under the collateral order doctrine, an interlocutory appeal from the denial of an attorney's motion to withdraw, as counsel, in a civil case. Although the "exercise of appellate jurisdiction in Maryland is normally dependent upon a final judgment rendered by the trial court," *Washington Suburban Sanitary Comm'n v. Bowen*, 410 Md. 287, 294, 978 A.2d 678 (2009), there are "three exceptions" to that rule: "appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; [3] and appeals from interlocutory rulings allowed under the common law collateral order doctrine." *Salvagno v. Frew*, 388 Md. 605, 615, 881 A.2d 660 (2005). Because, as Franke concedes, this appeal is neither allowed by statute nor permitted by Rule 2–602, we look, as he does, to the collateral order doctrine, in determining the appealability of the lower court's ruling. For an order to fall within that exception:

(1) it must conclusively determine the disputed question;

(2) it must resolve an important issue;

(3) it must be completely separate from the merits of the action; and

(4) it must be effectively unreviewable on appeal from a final judgment.

*Addison v. State*, 173 Md.App. 138, 154, 917 A.2d 1200 (2007).

Because there are no Maryland appellate decisions that specifically consider the appealability of a trial court's order

denying an attorney's motion to withdraw in a civil case, we turn, for assistance, to the decisions of those federal and state courts that have. When we do, we find that nearly all of the courts which have decided this issue, federal and state, have held that orders denying an attorney's request to withdraw fall within the collateral order doctrine. *See, e.g., Brandon v. Blech,* 560 F.3d 536, 537 (6th Cir.2009) (concluding that, because an "order compelling an attorney to continue work without compensation" "conclusively" determines the disputed question, "is unrelated to the merits, cannot be rectified after a final judgment, and may impose significant hardship," it "is just the sort of order the [collateral order] doctrine contemplates"); *Rivera–Domenech v. Calvesbert Law Offices PSC,* 402 F.3d 246, 249 (1st Cir.2005) (per curiam) (observing that "[a]t the time of the entry of the denial of the motion to withdraw, there was interlocutory jurisdiction to take an appeal to this court"); *Fid. Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.,* 310 F.3d 537 (7th Cir.2002) (holding that an order denying an attorney's request to withdraw satisfies the collateral order doctrine); *Whiting v. Lacara,* 187 F.3d 317 (2d Cir.1999) (per curiam) (holding that an order denying an attorney's request to withdraw satisfies the collateral order doctrine); *Galloway v. Clay,* 861 A.2d 30 (D.C.2004) (holding that an order denying an attorney's request to withdraw satisfies the collateral order doctrine); *Silva v. Perkins Mach. Co.,* 622 A.2d 443, 444 (R.I.1993) (per curiam) (holding "that the order denying [attorney's] motion to withdraw possesses the requisite degree of finality" and that it should be reviewed "immediately to avoid imminent hardship to the attorney").

Two of those cases—*Whiting v. Lacara,* 187 F.3d 317, and *Fidelity National Title Insurance Company of New York v. Intercounty National Title Insurance Company,* 310 F.3d 537—provide a particularly helpful and comprehensive analysis of this issue and therefore merit elaboration. In *Whiting v. Lacara,* the first of the two cases, a former police officer, Whiting, brought a civil rights action, in federal district court, against his former employer, the Old Brookville Police Depart-

ment, and other local entities and individuals, after his employment with that department was, in his view, wrongfully terminated *Id.* at 318. After retaining, then discharging his first counsel, Whiting's second counsel withdrew from the case, with Whiting's consent, after a jury had been selected, and that resulted in the discharge of the jury. Whiting eventually hired Garrett R. Lacara to represent him. *Id.* at 319.

But, less than two weeks before trial, Lacara filed a motion to withdraw as counsel. Attached to his motion was an affidavit in which Lacara averred, as grounds for his motion, that Whiting had "failed to follow legal advice," had not kept adequate contact with his office, had demanded that Lacara re-litigate issues that had already been decided, and had "demanded publicity against legal advice." *Id.* In fact, relations between attorney and client had become so strained that, according to Lacara, Whiting had entered his office on one occasion and, without permission, had begun "riffl[ing]" through Lacara's in-box. *Id.* When asked to leave, Whiting refused until Lacara called "911."

After denying these allegations, Whiting stated that he would agree to an order permitting Lacara to withdraw, provided that all of the fees that he had paid Lacara were refunded. That was not necessary because the district court denied Lacara's motion outright. Challenging that ruling, Lacara filed an appeal, as well as a motion requesting an "emergency stay" of the district court's order. *Id.* The Second Circuit granted the stay but denied Lacara's "request for relief on the merits at that time," whereupon Lacara renewed his motion to withdraw in the district court. *Id.* When that court rejected, once more, his request to withdraw, Lacara noted his second appeal. That appeal was then consolidated, for review, with his previous appeal.

The Second Circuit found that the order denying "Lacara's motion to withdraw as counsel satisfie[d] each of the ... requirements" of the collateral order exception, pointing out that it " 'conclusively determine[d] the disputed question,' "

that is, whether counsel will " 'continue his representation,' " *id.* at 320 (quoting *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375–76, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981)); that it presented "an issue completely separate from the merits of the underlying action," *id.;* and that, once a final judgment had been entered, the harm to Lacara "w[ould] be complete, and no relief c[ould] be obtained on appeal." *Id.* It hardly needs to be said that the order before us possesses the same features as the order which the Second Circuit found to be an appealable collateral order.

We now turn to the second of the two cases: *Fidelity National Title Insurance Company of New York v. Intercounty National Title Insurance Company, supra,* 310 F.3d 537. But, before we begin our review of that case, we note that there is one other reason why it is particularly deserving of our attention and that is because of its thoughtful and swift disposal of any inclination to equate an order denying withdrawal to a nonappealable order disqualifying counsel.

Fidelity National Title filed suit, in federal district court, alleging that the named corporate and individual defendants had wrongfully diverted $20 million from real estate escrow accounts under their control. Five of those defendants—three corporations and the two individuals, who controlled those corporate entities—retained the law firm of Myron M. Cherry & Associates, LLC, to represent them. As the case progressed, they repeatedly failed to pay their legal bills, eventually owing the Cherry law firm approximately $470,000 in legal fees and expenses. That led the Cherry law firm to move, on two separate occasions, to withdraw its representation. But, each time, its motion was denied. When the last of the two motions was denied, the law firm appealed. *Id.* at 539.

In considering whether it had jurisdiction over that appeal, the Seventh Circuit acknowledged that the Supreme Court had held that neither an order disqualifying a lawyer, *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86

L.Ed.2d 340 (1985), nor an order declining to do so, *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), was appealable.[3] While conceding a "superficial" similarity between orders denying motions to disqualify and motions to withdraw, it avowed a "vital difference": "[I]ncorrect decisions about disqualification may justify reversal at the end of the case, while an incorrect decision forcing an unpaid lawyer to continue providing services never would supply a reason to reverse the final judgment." 310 F.3d at 539. Then, observing that, "[b]ecause an order compelling a lawyer to work without prospect of compensation is unrelated to the merits of the dispute, cannot be rectified at the end of the case, and has a potential to cause significant hardship," the Seventh Circuit, relying upon the Second Circuit's decision in *Whiting, supra,* stated that it was joining that circuit in holding that an order denying a motion to withdraw "is immediately appealable as a collateral order." *Id.*

Because we find persuasive the reasoning of *Whiting* and *Fidelity*—showing that an order denying an attorney's motion to withdraw satisfies all of the criteria of the collateral order doctrine and therefore should be treated as an appealable collateral order—we hold that Franke's interlocutory appeal falls within that exception to the rule of finality and shall be considered by this Court on interlocutory appeal. Indeed, were we to rule otherwise, we would effectively deny the bar any means for seeking the reversal of what may prove to be an erroneous and extremely burdensome ruling, because to defer an appellate challenge to such a ruling until final judgment essentially renders it moot on arrival. *Rivera–Domenech, supra,* 402 F.3d at 249.

---

**3.** The Maryland counterparts to these decisions are, respectively, *Harris v. Harris, P.A.,* 310 Md. 310, 529 A.2d 356 (1987) (grant of motion to disqualify opposing counsel held not immediately appealable), and *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.,* 284 Md. 86, 394 A.2d 801 (1978) (denial of motion to disqualify opposing counsel held not immediately appealable).

## II.

■ Having decided that this matter is properly before us, we now consider the propriety of the decision below. In so doing, we employ an abuse of discretion standard. *Serio v. Baystate Props., LLC,* 203 Md.App. 581, 590, 39 A.3d 131 (2012); *Das v. Das,* 133 Md.App. 1, 31, 754 A.2d 441 (2000). "An abuse of discretion occurs 'where no reasonable person would take the view adopted by the court' or if the court acts 'without reference to any guiding rules or principles.'" *Serio,* 203 Md.App. at 590, 39 A.3d 131 (quoting *North v. North,* 102 Md.App. 1, 13, 648 A.2d 1025 (1994) (in banc)).

■ There are two Maryland rules governing when an attorney may withdraw from a case. They are Rule 1.16 of the Maryland Rules of Professional Conduct and Rule 2–132 of the Maryland Rules of Civil Procedure, in particular, paragraphs (b)(5), (b)(6) and (c) of the former and paragraph (b) of the latter.

Paragraphs (b)(5), (b)(6), and (c) of Rule 1.16 of the Maryland Rules of Professional Conduct state:

\* \* \*

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

\* \* \*

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; [or]

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client[.]

\* \* \*

(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating representation. When ordered to do so by a tribunal, a

lawyer shall continue representation notwithstanding good cause for terminating the representation.

\* \* \*

There is no dispute that Raymon, Franke's client, has, in the words of paragraph (b)(5) of Rule 1.16, "fail[ed] substantially to fulfill an obligation" owed to Franke, "regarding ... the services" provided by Franke as his lawyer. In fact, Raymon has never disputed the amount of legal fees that he owes Franke. It exceeds $120,000. Nor has he, as far as the record discloses, made any attempt to either pay any portion, no matter how small, of the fee arrearage or to obtain new counsel since his removal as trustee. That may be because he does not have the funds or because he adamantly insists that he is entitled to have Franke's continued representation, regardless of whether he pays the outstanding legal bills or not.

Moreover, there is no disagreement that Franke gave Raymon "reasonable warning," as required by the same paragraph of Rule 1.16, that he would withdraw unless Raymon fulfilled his obligation to cure the fee arrearage. Maryland Rule of Professional Conduct 1.16(b)(5). Two months before the scheduled trial, Franke advised Raymon of his intention to withdraw, as Raymon's counsel, for non-payment of fees and suggested that Raymon should either obtain new counsel or notify the court that he wished to proceed pro se. Thirteen days later, eight days more than the five days mandated by the Maryland Rules of Procedure, Franke filed his motion to withdraw, as well as a certificate that he had so informed Raymon by letter of his intention to withdraw his representation. In response, Raymon filed an opposition to Franke's withdrawal motion, acknowledging that he had received Franke's letter. Thus, Franke fully complied with paragraph (b)(5) of Rule 1.16, having established that Raymon had "substantially" failed "to fulfill an obligation" to him and that he had given Raymon "reasonable warning" of his decision to withdraw as Raymon's counsel.

As for paragraph (b)(6) of Rule 1.16, which permits a lawyer to "withdraw from representing a client if . . . the representation will result in an unreasonable financial burden on the lawyer," Raymon does not claim that there is any chance that Franke will be paid for his legal services except out of the assets of the Trust, a highly unlikely outcome. Indeed, given the circuit court's finding that, in his capacity as trustee, Raymon "was either dangerously cavalier in his treatment of the insurance benefits or he was willfully stealing from Ralph's estate and, therefore, from the Trust"; and the thirty-seven percent reduction in the value of the assets of the Trust under Raymon's trusteeship, there appears to be little likelihood either that the interim trustee will pay any portion of Raymon's legal fees, from the assets of the Trust, or that Raymon will be restored as trustee of the Trust, so that he can gain access to those funds himself. In any event, Franke should not have to wait to see if the latter event occurs. He was not retained on a contingent fee basis or on the assumption that he would be paid from the Trust's assets.

Having no reasonable prospect of receiving any of the more than $120,000 owed him, Franke faces, unless given the opportunity to withdraw, further expenditures of time and resources on Raymon's behalf, as significant proceedings lie ahead, notably, Raymon's trial. Thus, Franke, who is a solo practitioner, finds himself confronted with an "unreasonable financial burden," not unlike the four-lawyer firm in *Fidelity*, which was owed $470,000 by its client (which, when divided by four, the number of lawyers in the withdrawing firm, is approximately what Raymon owes Franke). As a consequence, the denial of the firm's motion to withdraw, shortly before trial, by the federal district court, was reversed by the Seventh Circuit. 310 F.3d at 541.

We now turn to Rule 2–132 of the Maryland Rules of Civil Procedure, which governs striking of an attorney's appearance.[4] Section (b) of that rule provides:

---

4. We observe that, if Franke had complied with Maryland Rule 2–132, then he has also fulfilled his obligation under Maryland Rule of Profes-

When the client has no other attorney of record, an attorney wishing to withdraw an appearance shall file a motion to withdraw. Except when the motion is made in open court, the motion shall be accompanied by the client's written consent to the withdrawal or the moving attorney's certificate that notice has been mailed to the client at least five days prior to the filing of the motion, informing the client of the attorney's intention to move for withdrawal and advising the client to have another attorney enter an appearance or to notify the clerk in writing of the client's intention to proceed in proper person. Unless the motion is granted in open court, the court may not order the appearance stricken before the expiration of the time prescribed by Rule 2–311 for responding. The court may deny the motion if withdrawal of the appearance would cause undue delay, prejudice, or injustice.

As directed by Rule 2–132(b), Franke's motion to withdraw was "accompanied by" a "certificate that notice ha[d] been mailed to" Raymon "at least five days prior to the filing of the motion." In fact, Franke waited thirteen days, after mailing a notice certificate to Raymon, before filing his motion to withdraw. The notice mailed to Raymon informed him of Franke's "intention to move for withdrawal" and advised Raymon "to have another attorney enter an appearance or to notify the clerk in writing of [his] intention to proceed in proper person." *Id.* Hence, Franke fulfilled the requirements of Rule 2–132(b).

But that does not end our analysis. In fact, it only opens the door to a much more complex task and that is consideration of the last sentence of Rule 2–132(b). That sentence enumerates the three grounds upon which a court may deny a motion to withdraw, even after the moving attorney has complied with the notice requirements of Rule 2–132(b). It states that a court "may deny" such a motion "if withdrawal of

---

sional Conduct 1.16(c) to "comply with applicable law requiring notice to or permission of a tribunal when terminating representation."

the appearance would cause undue delay, prejudice, or injustice."

Reviewing those terms in the sequence in which they are presented by paragraph (b), we first address "undue delay." No one suggested below or has argued on appeal that undue delay would have followed if Franke's motion to withdraw had been granted. Nor could this have been a pressing concern of the court, since it could have quite reasonably denied any ensuing motion to postpone, given that Raymon had ample time to secure other counsel or prepare for self-representation, a not unfeasible alternative, as Raymon, a medical doctor, is, by any standard, highly educated. As we observed in *Serio, supra,* 203 Md.App. at 592, 39 A.3d 131, "a client who did not act to secure substitute counsel following notification of an attorney's intent to withdraw is not entitled to a continuance." *Accord Das, supra,* 133 Md.App. at 25–26, 31, 754 A.2d 441. Thus, undue delay would not necessarily have been a result of granting Franke's withdrawal request.

Turning now to "prejudice," the second ground upon which a withdrawal can be denied, we conclude that, under the circumstances of this case, Raymon would not have suffered unfair prejudice if Franke's motion to withdraw had been granted. It is undisputed that Raymon has not paid Franke since April 15, 2009. It is inconceivable that Raymon, who, as we noted, is a medical doctor, did not understand that a likely consequence of his failure to pay any legal fees incurred, after his removal as trustee, would ultimately be an attempt by his counsel to withdraw from the case. And, when Franke finally did notify Raymon of his intention to withdraw, Raymon had two months in which to obtain new counsel.

And, if new counsel was not a feasible option, Franke placed Raymon in as good a position to represent himself as he could, having, as Franke explained in his motion to withdraw, "carried" and continued to represent Raymon, despite the legal fees that were owed, "because" he feared "the potential prejudice that m[ight] have occurred with discovery still outstand-

ing and with a hearing set for a Motion for a Preliminary Injunction."

Then, when the motion for a preliminary injunction was granted and Raymon was removed as trustee, Franke, disregarding once again the fees that Raymon owed him, oversaw "the turnover of trustee responsibilities" to the interim trustee and undertook "efforts to settle the matter." It was only after fulfilling those responsibilities that Franke finally informed Raymon of his intent to withdraw, timing his motion to withdraw to coincide with a lull in the case. Raymon was given two months' notice of Franke's intent to withdraw, and there was no element of surprise. In short, Franke has gone to some lengths to avoid compromising Raymon's interests. Indeed, any prejudice which Raymon might suffer as a consequence of granting the motion to withdraw is plainly self-inflicted. *Serio,* 203 Md.App. at 594, 39 A.3d 131.

■ Before leaving the question of prejudice, we observe that a circuit court faced with an attorney's motion to withdraw should also consider whether third parties would suffer unfair prejudice. *See, e.g., Brandon, supra,* 560 F.3d at 538 (observing that "a district court may forbid withdrawal if it would work severe prejudice on . . . third parties"); *Fidelity,* 310 F.3d at 541 (analyzing prejudice in terms of "[s]evere prejudice to third parties").

In declining to oppose Franke's motion to stay the proceedings, Myra and Ralph, Jr., thereby confirmed, we note, that they did not expect to suffer any prejudice because of the delay. And, indeed, we can think of none, as, having removed Raymon as trustee and installed Myra's cousin as interim trustee, the court had already granted, at least on a temporary basis, much of the relief they had requested. Thus, time—whether spent productively or futilely—was on their side.

We now turn to the third factor enumerated in Maryland Rule 2–132, "injustice," that is, the nature and extent to which parties to the litigation, any third parties, or the attorney seeking to withdraw would suffer injustice as a result, if the court granted or denied the motion.

As to the injustice an attorney would suffer upon the denial of his or her motion to withdraw, the Seventh Circuit observed, "an order compelling a lawyer to work without prospect of compensation ... has a potential to cause significant hardship" to the attorney. *Fidelity*, 310 F.3d at 539. *See also Brandon*, 560 F.3d at 538 (observing that to "compel[ ] attorneys to continue representing clients who refuse to pay imposes a severe burden"); *Rivera–Domenech, supra*, 402 F.3d at 249 (observing that it "simply expects too much of counsel to expend the additional energy necessary to go to trial," and to advance the necessary expenses, "without any real assurance that he will be paid for any of it, especially where he already is owed a substantial sum and the client has violated the written fee agreement") (citation and quotation omitted); *Silva, supra*, 622 A.2d at 444 (observing that to "require [the attorney] to finance the costs of [the client's] litigation would impose an unfair financial burden on the attorney").[5]

Raymon asserted in his opposition to the motion to withdraw: "[A]t this late stage in the matter, having completed discovery and other trial preparation work and [with] trial looming in [five] weeks, [he] would likely sustain irreparable harm and an unfair trial if Counsel were to withdraw [at] this stage." We reject this claim of injustice. Raymon must bear the consequences of his failure to pay existing attorney fees and his acknowledged inability to pay those likely to be incurred by the trial of this case. *Serio*, 203 Md.App. at 594, 39 A.3d 131 (defendant in civil case required to proceed to trial

---

**5.** We further note that Maryland Rule of Professional Conduct 1.16(b)(6), a rule which we previously addressed, permits withdrawal if "the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client" and, thus, is relevant to the injustice an attorney might suffer if compelled to represent a client with no reasonable prospect of payment. Moreover, other attorney obligations, in addition to Rule 1.16, may be relevant, depending on the circumstances. *Compare Whiting, supra,* 187 F.3d at 321 (addressing attorney's concerns that his client insisted "upon presenting a claim or defense that [was] not warranted under existing law and [could] be supported by good faith argument for an extension, modification, or reversal of existing law"), *with* Maryland Rule of Professional Conduct 3.1.

without counsel). On the other hand, the circuit court's order, effectively compelling Franke to continue representing Raymon, without reasonable likelihood of compensation, imposed an unreasonable financial burden on him. *Brandon,* 560 F.3d at 538; *Fidelity,* 310 F.3d at 539. Thus, there would be no injustice to Raymon if the motion to withdraw were granted, but there would be to Franke if that motion were denied.

Under the circumstances of this case, we hold that the circuit court abused its discretion in denying Franke's motion to withdraw. The effect of that denial was to compel Franke to provide free legal services to Raymon. Consequently, we shall vacate the trial court's order denying Franke's motion to withdraw and direct that it be granted.

**ORDER OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY DENYING MOTION TO WITHDRAW VACATED. CASE REMANDED WITH INSTRUCTIONS TO GRANT FREDERICK R. FRANKE, JR.'S MOTION TO WITHDRAW. COSTS TO BE PAID BY FRANKE.**