REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND
No. 0932
September Term, 2014

ELTON F. NORMAN, ATTORNEY FOR THE
ESTATE OF NANCY V. PUPPOLO BY ITS
PERSONAL REPRESENTATIVE CELESTE
A. PUPPOLO

v.

SINAI HOSPITAL OF BALTIMORE INC., et
al.

Eyler, Deborah S.
Graeff,
Hotten,

JJ.[1]

Opinion by Hotten, J.

Filed: October 28, 2015

[1] Judges Timothy E. Meredith and Douglas R. M.
Nazarian did not participate in the Court's
decision to designate this opinion for publication
in the Maryland Appellate Reports pursuant to
Maryland Rule 8-605.1

Elton F. Norman ("Mr. Norman") appealed a decision of the Circuit Court for Baltimore City, denying his Motion to Withdraw[1] as counsel from a medical malpractice action filed by Celeste A. Puppolo ("Ms. Puppolo"), personal representative of the Estate of Nancy V. Puppolo ("the Estate") against appellees, Sinai Hospital of Baltimore, et al.

Shortly after Mr. Norman entered his appearance on behalf of the Estate, he filed a Motion to Modify the Scheduling Order, which the court denied. Subsequently, during a pretrial conference, Mr. Norman advanced an oral motion for reconsideration of the court's scheduling order and an oral motion to withdraw, citing *inter alia*, lack of preparation and trial experience to try the case. The court denied both motions, holding that Ms. Puppolo appreciated the risk of procuring the late-retained Mr. Norman to her detriment and that Mr. Norman failed to raise any grounds under the Maryland Rules in support of his motion to withdraw. This appeal followed. Mr. Norman presents the following question for our review:

> I.     Did the [circuit] court abuse its discretion under Maryland Rules and [c]ourt opinions by denying Mr. Norman's Motion to Withdraw?

For the reasons that follow, we shall dismiss Mr. Norman's appeal.

## FACTUAL AND PROCEDURAL HISTORY

In the underlying action, the Estate sought compensation for damages allegedly caused by Sinai Hospital of Baltimore Inc. and Christine D'Arbela, M.D. (formerly Kajubi) regarding the care and treatment of the decedent, Nancy Puppolo. The claim was originally

---

[1] Mr. Norman filed the motion and this instant appeal on his own behalf, not on behalf of his client, the Estate.

filed by Ms. Puppolo, *pro se,* on January 18, 2011 in the Health Care Alternative Dispute Resolution Office. Ms. Puppolo proceeded *pro se* in this matter until she retained Lowell J. Gordon, Esquire ("Mr. Gordon"), who entered his appearance on April 11, 2011. Mr. Gordon's representation was subsequently terminated in August, 2012 for reasons not specified in this appeal. Thomas O'Toole, Esquire (Mr. O'Toole") entered his appearance on behalf of the Estate on July 25, 2013. On December 18, 2013, the court issued an order setting a trial date for the underlying action to begin on July 8, 2014.

On May 10, 2014, Ms. Puppolo wrote a letter to Mr. O'Toole, terminating his representation and citing several grievances relative to his performance as counsel. A pretrial settlement conference was subsequently held on May 19, 2014. Appellees were in attendance. Ms. Puppolo however, failed to appear, without securing prior approval from the court or providing notice to appellees. Thereafter on May 27, 2014, Mr. Norman entered his appearance on behalf of the Estate.

On May 30, 2014, Mr. Norman filed a Motion to Modify the Scheduling Order as attorney for the Estate, seeking to postpone the July 8, 2014 trial date to conduct further discovery and allow additional time to prepare for trial. In response, appellees filed an opposition to the motion and requested the court to move the trial date one day, to July 9, 2014.[2] On July 2, 2014, the court denied the Estate's motion and the parties were scheduled to appear before a trial judge on July 8, 2014 for a continued pretrial conference.

---

[2] On May 28, 2014, the court granted appellees' motion to postpone the trial date by one day, to July 9, 2014, to allow representatives for Sinai Hospital of Baltimore, Inc. to be present when trial commenced.

During the pretrial conference held on July 8, 2014, Mr. Norman argued a Motion for Reconsideration of the denial of the Motion to Modify the Scheduling Order and the oral Motion to Withdraw as counsel.[3]  After hearing argument, the court denied both motions.

Thereafter, Mr. Norman filed a Notice of Appeal of the court's denial of his motions. As a result, the trial did not commence on July 9, 2014.  Additional facts shall be provided, *infra*, to the extent they prove relevant in addressing the issues presented.

## DISCUSSION

Mr. Norman avers that an order denying a motion to withdraw is appealable under the collateral order doctrine.  We disagree.  The standard of review utilized in considering the appealability of a court's order denying a motion to withdraw was outlined by this Court in *In re Franke*, 207 Md. App. 679 (2012):

> [T]he exercise of appellate jurisdiction in Maryland is normally dependent upon a final judgment rendered by the trial court[.]  [However,] there are three exceptions to that rule: appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine.  [In instances when an appeal] is neither allowed by statute nor permitted by [Md.] Rule 2-602 . . . we look . . . to the collateral order doctrine, in determining the appealability of [a] lower court's ruling. For an order to fall within that exception: (1) it must conclusively determine the disputed question; (2) it must resolve an important issue; (3) it must be completely separate from the merits of the action; and (4) it must be effectively unreviewable on appeal from a final judgment.

*Id*. at 685 (internal citations and footnotes omitted).

---

[3] On July 3, 2014, Mr. Norman also filed a written Motion to Withdraw.  The trial judge determined that his motion was not ripe for attention at the time of the pretrial conference because the time for appellees to file an opposition had not yet expired.  Mr. Norman subsequently renewed his motion in open court.

The collateral order doctrine is limited in scope. "Maryland caselaw consistently emphasize[s] that the [collateral order] doctrine is to be tightly construed." *Kurstin v. Bromberg Rosenthal, LLP*, 191 Md. App. 124, 144-46 (2010); *see also In re Franklin P.*, 366 Md. 306, 327, (2001) (stating that the collateral order doctrine is to be applied "only sparingly"); *In re Foley*, 373 Md. 627, 633–34 (2003) (stating that in Maryland, the four requirements of the collateral order doctrine are strictly applied and appeals under the doctrine may be entertained only in extraordinary circumstances).

We conclude that the circuit court's order denying Mr. Norman's Motion to Withdraw is not appealable because the order satisfied only two of the requirements under the collateral order doctrine. The order issued by the court conclusively determined the disputed question of whether Mr. Norman will continue representation of the Estate and that issue was separate from the merits of the malpractice action.

However, the order did not resolve an "important issue" because there was no evidence of any harm to Mr. Norman by the court's ruling. Moreover, the order was not effectively unreviewable on appeal because Mr. Norman's client would still have the benefit of a remedy before a final judgment was rendered. *Contra Franke*, 207 Md. App. at 688-89; *C.f.*, *Brandon v. Blech*, 560 F.3d 536, 537 (6th Cir. 2009) (concluding that "[a]n order compelling an attorney to continue work without compensation is just the sort of order the doctrine contemplates [ ]" because "[i]t conclusively determined the withdrawal question, is unrelated to the merits, [and] cannot be rectified after a final judgment [ ]"); *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 310 F.3d 537 (7th Cir. 2002) (concluding that an order denying an attorney's request to withdraw was an

appealable order because it satisfied the requirements under the collateral order doctrine); *accord Whiting v. Lacara*, 187 F.3d 317 (2d Cir. 1999); *Galloway v. Clay*, 861 A.2d 30 (D.C. 2004).

Mr. Norman contends that pursuant to the holding in *Franke*,[4] the court abused its discretion by denying the motion to withdraw. Mr. Norman concedes that the case at bar does not involve a matter of compensation as in *Franke*. However, he asserts that *Franke* is analogous because "an agreement was reached between attorney and client that was not upheld and it now creates a hardship for the attorney." In support of this contention, Mr. Norman recounts that, "[he] agreed to participate in this case solely in the role of support counsel," and as a result, "[b]ased his entire agreement to enter his appearance contingent upon two things: (1) postponement of the trial date; and (2) the client obtaining a lead trial attorney." Nonetheless, he continues, "as of July 7, 2014, neither has transpired."

Mr. Norman further asserts,

> For the [c]ourt to deny Mr. Norman the opportunity to withdraw would have a chilling effect on cases where attorneys are willing to play a support role that gives the client more time to find a lead attorney and thus the [c]ourt would create an undue hardship on the supporting attorney.
>
> Even though this is not a matter of compensation as in [*Franke*], in denying Mr. Norman's [M]otion to [W]ithdraw, the lower court did not allow the

---

[4] In *Franke*, we held that the court abused its discretion when it denied attorney's motion to withdraw as counsel for the following reasons: the attorney gave the client advanced notice of his intent to withdraw; granting the motion would not cause undue delay; any prejudice the client would suffer by the granting of the motion was self-inflicted as counsel sought to withdraw because the client stopped paying his attorney's fees; and denial of the motion would require counsel, a solo practitioner, to work on the case pro bono and would result in attorney not being able to work on cases for paying clients. *See generally Franke*, 207 Md. App. 679.

parties to obtain the benefit of their bargain in entering into the retainer agreement and thus created an undue hardship upon Mr. Norman and his client.

Mr. Norman's argument is unpersuasive. The circuit court's denial did not create undue hardship, and was, in fact, a situation of Mr. Norman's own doing. Rule 1.16 of the Professional Conduct Rules, Sections (b)(5) and (c), provide, in pertinent part:

\* \* \*

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

\* \* \*

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled[.]

\* \* \*

(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

In determining the circumstances under which a client "fails substantially to fulfill an obligation" under Rule 1.16(b)(5), we look to this Court's holding in *Franke* for guidance. In *Franke*, we concluded:

There is no dispute that Raymon, Franke's client, has, in the words of paragraph (b)(5) of Rule 1.16, 'fail[ed] substantially to fulfill an obligation' owed to Franke, regarding . . . the services provided by Franke as his lawyer. In fact, Raymon has never disputed the amount of legal fees that he owes Franke. It exceeds $120,000. Nor has he, as far as the record discloses, made any attempt to either pay any portion, no matter how small, of the fee arrearage or to obtain new counsel since his removal as trustee. . . .

- 6 -

Moreover, there is no disagreement that Franke gave Raymon 'reasonable warning,' as required by the same paragraph of Rule 1.16, that he would withdraw unless Raymon fulfilled his obligation to cure the fee arrearage. Two months before the scheduled trial, Franke advised Raymon of his intention to withdraw, as Raymon's counsel, for non-payment of fees and suggested that Raymon should either obtain new counsel or notify the court that he wished to proceed [*pro se*]. Thirteen days later, eight days more than the five days mandated by the Maryland Rules of Procedure, Franke filed his motion to withdraw, as well as a certificate that he had so informed Raymon by letter of his intention to withdraw his representation . . . *Thus, Franke fully complied with paragraph (b)(5) of Rule 1.16, having established that Raymon had "substantially" failed "to fulfill an obligation" to him and that he had given Raymon "reasonable warning" of his decision to withdraw as Raymon's counsel.*

*Franke*, 207 Md. App. at 691 (emphasis added) (internal citation omitted).

The circumstances of *Franke* are inapposite to the case before us, since Mr. Norman did not establish that Ms. Puppolo substantially failed to fulfill obligations owed to him, as contemplated in *Franke*. To the extent there was a hardship, it was one that Mr. Norman created.

Cases where a court determined that a client substantially failed to fulfill an obligation owed to counsel involved situations where the attorney would suffer immense financial hardship or exposure to sanctions for ethical violations, or a significant conflict of interest existed between attorney and client. *See Franke*, 207 Md. App. 679 (holding that counsel would suffer undue hardship if motion to withdraw was not granted because client failed to pay over $120,000 in legal fees, yet expected continued representation by counsel); *Fidelity*, 310 F.3d 537 (reversing an order denying appellant's motion to withdraw because client failed to pay over $470,000 in legal fees and expenses). *See also Whiting*, 187 F.3d 317 (holding that denying counsel's motion to withdraw would result in

undue hardship because continued representation while honoring client's requests would force counsel to violate ethical obligations). Notably, in those instances, there was either actual harm or the potential for significant harm to the attorney seeking to withdraw that was not of the attorney's own doing.

The holding in *Franke* is dispositive. Mr. Norman did not show that he incurred fees that his client refused to pay, and if not permitted to withdraw, that he would be placed in a position to continue representation without compensation. In fact, Mr. Norman did not mention anything regarding fees in support of his motion.

Additionally, Mr. Norman did not show that there was a conflict of interest between him and his client, making continued representation impossible or otherwise harmful to him. Rather, Mr. Norman demonstrated only that he was unprepared for trial and lacked the expertise to try the case. This was not evidence of actual harm or the potential for significant harm, *i.e.*, undue hardship, because he was aware of those circumstances when he entered his appearance and the contingency agreement was a result of his own doing.

The absence of actual harm or the potential for significant harm distinguishes the case at bar from *Franke* and its predecessors, *Whiting* and *Fidelity*, *supra*, in which the collateral order doctrine applied. Thus, the order denying Mr. Norman's motion did not resolve an "important issue" as required under the collateral order doctrine.

Moreover, the order does not meet the fourth requirement under the collateral order doctrine because the circuit court's order denying Mr. Norman's motion was not effectively unreviewable on appeal. We remain cognizant that the collateral order doctrine is limited in scope and tightly construed. *See Kurstin*, 191 Md. App. at 144-46. A prominent feature

- 8 -

of the collateral order doctrine cases is that there is a time-bound right that will be lost if an appeal cannot be taken immediately. *See Hudson v. Housing Authority of Baltimore City*, 402 Md. 18 (2007) (holding that "the collateral order doctrine permits a reviewing appellate court to treat as final, without consideration of the procedural posture of a case, a 'narrow' class of interlocutory orders in 'extraordinary circumstances'"). That is not the situation in the case at bar.

Assuming, *arguendo,* that Mr. Norman continued representation of the Estate and the circuit court issued a verdict in favor of appellees, an appellate court on review of that final judgment could decide whether the circuit court abused its discretion by denying his motion to withdraw. In that regard, if the reviewing court determined that the circuit court should have granted Mr. Norman's motion and reversed the judgment, Mr. Norman's client would still have the opportunity to have a new trial without Mr. Norman representing the Estate.

Thus, Mr. Norman would not continue to suffer any harm — assuming he successfully demonstrated that he would suffer any harm or the potential for significant harm at the outset — that would be impossible to remedy by the time of an appeal from a final judgment. In absence of such harm, the order denying Mr. Norman's motion does not fit within the narrow class of interlocutory orders that are considered unreviewable final judgments.

Accordingly, we decline to address whether the circuit court abused its discretion in denying Mr. Norman's motion because the court's denial of his motion was not an

appealable order and thus, was unreviewable by this Court.[5]  *Cf. Franke*, 207 Md. App.

689-90 (employing an abuse of discretion standard only after concluding that an order

denying a motion to withdraw was an appealable collateral order because it satisfied all the

criteria of the collateral order doctrine).

**APPEAL DISMISSED.  COSTS TO BE PAID BY MR. NORMAN.**

---

[5] We acknowledge that now, an attorney may file a notice of limited appearance with the circuit court pursuant to an agreement with a client under Maryland Rule 2-131(b). However, that rule was not in effect when Mr. Norman noted the instant appeal.