IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 1, 2024

## IN RE LILA F.

**Appeal from the Juvenile Court for Unicoi County**
**No. JV8998, 2022-JV-8970        R. Mitchell Manuel, Judge**

_____

### No. E2023-01112-COA-R3-PT
_____

A mother appeals the termination of her parental rights to one of her children. On the day of trial, her appointed counsel orally moved for leave to withdraw. The court granted the motion, and the trial proceeded with the mother representing herself. Ultimately, the court found clear and convincing evidence of six grounds for termination and that termination of the mother's parental rights was in the child's best interest. The mother argues on appeal that the trial court erred in permitting her appointed counsel to withdraw. Because we agree, we vacate the judgment terminating her parental rights and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Erin McArdle, Johnson City, Tennessee, for the appellant, Jessica F.

Jonathan Skrmetti, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Amber L. Barker, Senior Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

### I.

In February 2022, the Tennessee Department of Children's Services ("DCS") received a referral alleging environmental neglect and drug exposure of Lila F. ("Child").

The Child's mother, Jessica F. ("Mother"), initially accepted DCS's offer of services. But she failed to maintain contact.

A few months later, the DCS case manager learned that Mother had tested positive for MDMA,[1] amphetamines, methamphetamine, and alcohol at an outpatient clinic. Mother admitted to active drug use. But she refused to meet with DCS because she feared arrest on outstanding warrants. The case manager found the Child with Mother's ex-boyfriend. The Child's father was unknown. DCS immediately took the Child into custody.

A week later, DCS filed a dependency and neglect petition in juvenile court. Finding probable cause to believe that the Child was dependent and neglected, the court awarded temporary legal custody of the Child to DCS. Mother did not appear at the subsequent adjudicatory hearing. Finding that Mother had notice of the hearing date, the court adjudicated the Child dependent and neglected "by default."

On December 14, 2022, DCS petitioned to terminate Mother's parental rights to the Child. The petition alleged six statutory grounds for termination: severe child abuse, abandonment by failure to visit, abandonment by failure to provide a suitable home, persistence of conditions, substantial noncompliance with the permanency plan, and failure to manifest an ability and willingness to assume custody.

Because Mother was indigent, the court appointed counsel to represent her during the termination proceedings. In March 2023, Mother's first appointed counsel moved to withdraw because "the attorney client relationship [was] irretrievably broken." The court granted the request.[2] A week later, it appointed new counsel to represent Mother. Trial was scheduled for June 7, 2023.

Mother was not in the courtroom when trial began. The court asked Mother's counsel if she had any knowledge of her client's whereabouts. Counsel responded,

> Well, I don't, Your Honor. I know [Mother] knows about this court date, and I had gotten a text from my assistant just about an hour ago that she had emailed, she just came from a job interview and got a job. So but that, well, that's been over an hour ago, Your Honor.

---

[1] "MDMA is a synthetic drug commonly referred to as 'Ecstasy or Molly.'" *In re Emmalyn H.*, No. E2022-00710-COA-R3-PT, 2023 WL 3411598, at *1 n.3 (Tenn. Ct. App. May 12, 2023).

[2] Mother was not included on the certificate of service attached to the motion to withdraw or the order granting the motion.

Counsel orally moved to withdraw "[b]ased on the fact that [Mother] is not here, and also based upon the fact that she's had difficulties reaching my office and attending appointments with me." Without further questioning, the court allowed Mother's counsel to withdraw.

Trial proceeded without Mother or her counsel. Mother arrived during the testimony of the DCS's second witness. After the direct examination, the court informed Mother that her counsel "indicated prior to the start of the hearing . . . that she had had very limited contact with you" and, on that basis, counsel "had moved the Court for permission to withdraw, which was granted." The court indicated that Mother would represent herself for the remainder of the trial. Mother explained that she was late to court because of a job interview. And she had informed her attorney of her whereabouts. But the court was unmoved: "I understand, but this has to have priority."

The trial court terminated Mother's parental rights. It concluded that there was clear and convincing evidence of six statutory grounds for termination. It also concluded that the evidence was clear and convincing that termination of Mother's parental rights was in the Child's best interest.

## II.

New counsel was appointed for Mother on appeal. Mother raises one issue for our review: whether the court violated Mother's due process rights when it allowed her attorney to withdraw at the outset of trial.

Despite the important interest at stake, the Due Process Clause of the United States Constitution does not "require[ ] the appointment of counsel in every parental termination proceeding." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 31 (1981). But, in Tennessee, indigent parents do have a statutory right to counsel at "all stages" of a parental termination case. Tenn. Code Ann. § 37-1-126(a)(2)(B)(ii) (Supp. 2023); *In re Carrington H.*, 483 S.W.3d 507, 527 (Tenn. 2016). DCS contends that Mother implicitly waived her statutory right to counsel. *See State Dep't of Children's Servs. v. Agbigor*, No. M2000-03214-COA-R3-JV, 2002 WL 31528509, at *5-6 (Tenn. Ct. App. Nov. 15, 2002).

An appointed attorney must seek leave of the court to withdraw. TENN. SUP. CT. R. 13 § 1(e)(5). The grant or denial of a request to withdraw as counsel is a matter left to the court's discretion. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 135 (1st Cir. 1985); *Washington v. Sherwin Real Est., Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982); *Devincenzi v. Wright*, 882 P.2d 1263, 1265 (Alaska 1994); *Azmat as Next Friend of Azmat v. Bauer*, 588 S.W.3d 441, 446 (Ky. 2018); *In re Franke*, 55 A.3d 713, 71920 (Md. Ct. Spec. App. 2012); *Byrd v. Mahaffey*, 78 P.3d 671, 673 (Wyo. 2003). A court abuses its discretion when it applies the wrong legal standard, reaches an "illogical or unreasonable decision," or bases

its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

The principles embodied in the Rules of Professional Conduct should guide the court's decision on an attorney's motion to withdraw. *See, e.g.*, *Zagorski v. State*, 983 S.W.2d 654, 660 (Tenn. 1998); *State v. Branam*, 855 S.W.2d 563, 566 (Tenn. 1993); *Prince v. Campbell*, No. 01A01-9806-CV-00276, 1999 WL 51844, at *2 (Tenn. Ct. App. Feb. 5, 1999); TENN. SUP. CT. R. 13 § 1(e)(5) (referencing TENN. SUP. CT. R. 8, RPC 1.16). The Rules of Professional Conduct permit an attorney to withdraw from a representation when "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services" or "the representation . . . has been rendered unreasonably difficult by the client." RPC 1.16(b)(5), (6); *see also* TENN. SUP. CT. R. 8.

Here, counsel moved to withdraw based on Mother's "difficulties . . . attending appointments" and her failure to appear for trial. But the decision to withdraw does not appear to be guided by Rule of Professional Conduct 1.16. The record does not support a finding that Mother failed substantially to fulfill an obligation to her counsel or that the representation had been rendered unreasonably difficult. Counsel did not establish that Mother failed to fulfill an obligation. We do not know how many appointments Mother missed or if Mother offered counsel any explanation for not attending. Nor did the court ascertain whether counsel gave Mother any prior warning that she intended to withdraw. *See* TENN. SUP. CT. R. 8, RPC 1.16(b)(5) (requiring the lawyer to give the client "reasonable warning that the lawyer will withdraw unless the obligation is fulfilled").

A failure to communicate with counsel or appear for trial can render a representation unreasonably difficult. *See Agbigor*, 2002 WL 31528509, at *5-6. And, reviewing the evidence in the most favorable light, Mother missed more than one appointment. *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (holding that "appellate court should . . . review the evidence in the light most favorable to the [discretionary] decision"). But counsel offered no other information about her efforts to communicate with her client in the short period of time between counsel's appointment by the court and the trial.[3] It also appears that Mother at least attempted to notify counsel about her whereabouts on the day of trial. Counsel did not indicate whether she tried to contact her client after receiving the email about the job interview. *Cf. In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *5 (Tenn. Ct. App. Dec. 29, 2010) (noting counsel "had no knowledge" of her client's whereabouts and had been unable to reach him for over a month).

The record also does not support DCS's contention that Mother implicitly waived her right to appointed counsel. *Cf. Agbigor*, 2002 WL 31528509, at *5-6 (client

---

[3] Only 78 days separate the date counsel was appointed and the start of trial.

"effectively waived" right to representation when the client had not contacted appointed counsel in months, was unreachable by counsel, voluntarily travelled out of the country for an extended period until two weeks before trial, and did not prepare for or arrive on time to trial). In the context of a parental termination proceeding, we have found an implicit waiver of the right to appointed counsel where the client failed "to assist his counsel or communicate with her at all in the two months before the hearing [on termination of parental rights]." *In re Elijah B.*, 2010 WL 5549229, at *6; *see also In re M.E.*, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at *12 (Tenn. Ct. App. Aug. 16, 2004) (noting that the "[f]ailure to cooperate with appointed counsel can constitute a waiver of the right to appointed counsel."). Counsel's vague reference to missed appointments is not enough to support a finding that Mother failed to remain in contact with her attorney in the months before trial. Nor did she skip the trial without explanation.

Given the limited information provided by Mother's counsel, the court erred in granting the request to withdraw at the outset of trial. Parents are entitled to fundamentally fair procedures in termination proceedings. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)). In Tennessee, an important component of those procedures is the statutory right to appointed counsel for indigent parents. *See id.* at 533-34.

Under the circumstances, we find it inappropriate to review the court's findings as to the grounds for termination and the Child's best interest. The findings were based on evidence that went largely unchallenged by Mother and was offered at a hearing during which Mother did not have the benefit of counsel. So we vacate the decision to terminate Mother's parental rights to the Child and remand for a new trial. On remand, the court should make a new determination concerning Mother's indigency and, if necessary, appoint her counsel.

### III.

Because the court erred in granting Mother's counsel leave to withdraw, we vacate the court's decision to terminate Mother's parental rights. We remand for a new trial and for such other proceedings that are appropriate and consistent with this opinion.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE