IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2017

**IN RE JAMIE B., ET AL.**

**Appeal from the Juvenile Court for Bedford County**
**No. 2016-JV-1202   Charles L. Rich, Judge**

_____

**No. M2016-01589-COA-R3-PT**

_____

A mother appeals the termination of her parental rights to two of her children. Shortly after the filing of the petition to terminate parental rights, the juvenile court appointed counsel for the mother, who lacked the funds to afford one. However, on the day of trial, appointed counsel orally moved for leave to withdraw. The court granted the motion, and the trial proceeded with the mother representing herself. Ultimately, the court found clear and convincing evidence of five grounds for termination and that termination of the mother's parental rights was in the children's best interest. The mother argues on appeal, among other things, that the trial court erred in permitting her appointed counsel to withdraw. Because we agree, we vacate the judgment to the extent it terminated the mother's parental rights and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated in Part and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Tiffany Kodman, Shelbyville, Tennessee, for the appellant, Kisha M.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and Rachel E. Buckley, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

# OPINION

## I.

On January 13, 2015, the Tennessee Department of Children's Services ("DCS") removed Jamie B., then age 6, and Ashley B., then age 3, from the home of their father, Jamie Lee B. ("Father").[1]  At the time, Father admitted to manufacturing methamphetamine or meth within the home, and authorities discovered two, one-pot meth labs.  The authorities found Father in the home's sole bathroom, pouring chemicals into jars.  After submitted to a drug screen, Father tested positive for methamphetamine and Oxycodone.

Kisha M., the children's mother ("Mother"), had legal custody of the children.  But she was not actively involved in parenting them, only seeing them approximately once a month.  Mother was homeless, and like Father, she was abusing drugs.

On January 15, 2015, DCS petitioned the Juvenile Court of Bedford County, Tennessee, to find the children dependent and neglected.  *See* Tenn. Code Ann. § 37-1-103(a)(1) (2014).  At the preliminary hearing on the petition, the court appointed counsel for both Mother and Father and a guardian ad litem for the children.  The court also ordered that the children remain in the temporary care and custody of DCS.

Mother and Father waived the adjudicatory hearing, and based on stipulated facts, the court found that the children were dependent and neglected.  Also on stipulated facts, the court found that Father in particular had subjected the children to severe abuse.  The court ordered the children to remain in DCS custody but granted the parents supervised visitation.

On January 11, 2016, DCS petitioned the juvenile court to terminate Father's and Mother's parental rights.  DCS alleged several statutory grounds for terminating parental rights, five against Mother and four against Father.  The court again appointed counsel for both Mother and Father, the same attorneys who had represented them in the prior dependency and neglect case.  And the court set the trial for June 16, 2016, at 9:00 a.m.

The case was called at 9:09 a.m. on June 16, 2016.  But neither Father nor Mother were present.  Appointed counsel for Father made an oral motion for leave to withdraw.  After noting Father was not present in the courtroom and questioning counsel regarding his efforts to communicate with Father prior to the hearing, the court granted the motion.

---

[1] The facts preceding the petition to terminate parental rights are garnered from the allegations in the petition for temporary legal custody and ex parte order filed by DCS in the dependency and neglect proceeding.  Father and the children's mother stipulated that the allegations were true.

2

Appointed counsel for Mother ultimately made the same motion, but at least initially, he seemed reluctant to do so. During a colloquy with the court, Mother's counsel openly pondered the decision:

> [COUNSEL]: . . . . I'm in a similar posture [to Father's counsel], as far as communication. I have had the luxury of speaking with [Mother], as she has been in General Sessions Court numerous times. But via phone calls, her phone is either disconnected or now it's nonexistent. I've spoken with her mother who thought that she would [be] here today. I saw [Mother] Tuesday and asked if we could meet then and she just promptly disappeared.
>
> . . . .
>
> [COUNSEL]: And it's my understanding that she would be here today and she is not here. [Mother's] mother did attempt to contact her, through a friend's phone that [Mother] has been using periodically, to no avail.
>
> So I guess it would be appropriate to move to withdraw. But I am here. I will actually leave it up to the Court's discretion.
>
> THE COURT: I mean, if you are asking to withdraw, I think yours is a very similar posture as [counsel for Father] found himself. I don't know what you can do for someone who won't communicate with you, won't aid in preparing any kind of defense to this, or response to the allegations, and so . . .
>
> [COUNSEL]: I just wanted to wait until the last second to give her every opportunity, and, yes, I move to withdraw.
>
> THE COURT: Okay. Well, the last second has ticked off the clock. She's not here.

Unlike with Father's counsel, the court did not question Mother's counsel regarding his efforts to communicate with Mother prior to the hearing, but it did grant the request to withdraw.

The trial proceeded with DCS calling its first witness. Several questions into the direct examination, Mother entered the courtroom and was identified for the court by her recently relieved counsel. The court first addressed Mother: ". . . I have actually just granted a motion to relieve your lawyer as counsel because you were not here, and

apparently have not really met with him prior to this hearing today." The court then inquired if Mother intended to contest the matter.

Mother's response is not reflected in the transcript, but whatever it may have been, the response prompted the court to make inquiries of both her recently relieved counsel and Mother. After confirming[2] that counsel was willing to resume the representation, the court asked Mother if she desired representation.

> THE COURT: Okay. Well, I guess I need to ask you then – of course, you do have a – this is a termination of parental rights, and it's involving a constitutional right of you to be able to parent the children. It's been well established you do have the right to be represented by counsel in this proceeding.
>
> And so, I'm just getting that clear because I don't know whether I need to speak with you directly or through your counsel. If he's representing you, then I have to speak with him. So are you wanting – I guess, first of all, are you wanting to be represented, being the first question.
>
> [MOTHER]: Yes.

Mother's statement that she did not intend to waive her right to counsel prompted the court to inquire of recently relieved/current counsel of Mother's position with respect to her parental rights.

> THE COURT: Okay. All right. That being the case, have you had enough opportunity to speak with her to decide whether she's here to contest this?

---

[2] "Confirming" might be an overstatement as counsel's response to the court did not clearly indicate whether he was willing to resume the representation:

> THE COURT: Okay. I guess, first of all, I have relieved you as counsel, so are you – the fact that she has now shown up, are you – do you wish to remain as counsel?
>
> [COUNSEL]: I am willing to assist the Court in any way toward being [of] assistance. I am willing to assist [Mother], if that's deemed appropriate by the Court.

Counsel may have been suggesting only a limited scope representation. *See* TENN. SUP. CT. R. 8, RULES. OF PROF'L CONDUCT R. 1.2 cmt. 6 (2016).

[COUNSEL]: At this point, it appears that she's unsure. I don't think she understood the language.

THE COURT: Okay.

[COUNSEL]: And I want to ask her – should I ask her on the record, voir dire her on the record?

THE COURT: Well, why don't I just let you-all have a private conversation and then we'll go from there. How about that?

Following the break, the court began by seeking an answer to its previous question regarding Mother's position. Counsel again moved for leave to withdraw.

[COUNSEL]: Her posture is unclear. She hasn't made a clear decision. That being said, I think I'm going to have to renew the motion to withdraw, in that I am not prepared. She hasn't worked – I'm not going to say anything.

THE COURT: All right. You don't know what, if anything, you have to work with, I know is what you're probably trying to say.

[COUNSEL]: Exactly, sir.

THE COURT: Okay. And, of course, you know, [Mother], that's very important. Now, you -- you know, this is, obviously, a very important juncture. But, you know, I'll make note of the fact, first, we thought you weren't going to show up at all; you were here 30 minutes late.

After granting counsel's motion, the court began asking Mother directly about her intentions. After some back and forth, Mother responded "I don't want to give my rights up."

Still, the court was concerned about difficulties communicating with Mother. This led to inquiries about Mother's sobriety.

THE COURT: . . . . Are you under the influence of any kind of intoxicant?

MOTHER: No.

THE COURT: If we gave you a drug screen, you're saying you wouldn't – you'd pass it, you wouldn't be positive for anything?

5

MOTHER: (Moves head side to side.)

Later, after the proof resumed, the court revealed on the record that Mother's drug screen was positive for tetrahydrocannabinol, methamphetamine, and amphetamines. When asked to explain, Mother admitted to "smok[ing] a joint a few days ago" but denied recent, knowing exposure to methamphetamine or its parent drug, amphetamine.

In its case in chief, DCS offered the testimony of a family services worker, Mother, the children's foster parent, and the in-home care coordinator in charge of Mother's and Father's supervised visitation. Mother represented herself throughout the proceeding. But, during her cross-examination of DCS's first witness, the court, at the suggestion of the guardian ad litem, called for Mother's public defender to come to the courtroom. Mother consulted with her public defender, and her public defender remained for at least a portion of the proceeding, offering clarification on Mother's criminal record and pending charges.

Mother's proof consisted of her own testimony and the testimony of her sister and mother. Mother's sister appeared to have been called primarily to establish her as an alternative placement for her children. But on cross-examination, Mother's sister testified to her belief that Mother was still abusing drugs. The sister's testimony was so impactful that it was cited by the court several times in its ruling from the bench and referred to in its written order.

On June 24, 2016, the court entered a detailed order terminating the parental rights of both Father[3] and Mother. With respect to Mother, the court found that DCS had proven by clear and convincing evidence each of the alleged statutory grounds for termination. Specifically, the court found that Mother had abandoned the children by willfully failing to support or visit them within the four-month period preceding the filing of the termination petition and by failing to provide a suitable home. The court found that Mother had failed to comply in a substantial manner with the responsibilities of the permanency plans adopted by the court. The court also found that the conditions that led to the children's removal still persisted and were likely to continue to persist. Finally, the court determined that there was clear and convincing evidence that termination of Mother's parent rights was in the children's best interest.

## II.

Mother, who has been appointed counsel for her appeal, raises two issues for our review:

---

[3] Father did not appeal the judgment, so we focus solely on Mother's parental rights.

6

1. Whether the trial court erred when it allowed the appellant to act pro se during the termination hearing after the appellant's attorney withdrew on the day of the hearing and the appellant requested counsel.

2. Whether the trial court erred when it found that there was clear and convincing evidence that the appellant abandoned her children willfully and that it was in the best interest of the children to terminate appellant's parental rights.

## A. ASSISTANCE OF COUNSEL

Despite the important interest at stake, the Due Process Clause of the United States Constitution does not "require[] the appointment of counsel in every parental termination proceeding." *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31 (1981). The Due Process Clause only requires the appointment of counsel in such proceedings when "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions" are sufficient to overcome "the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty." *Id*. at 27, 31. The determination of whether the presumption has been overcome is made first by the trial court. *Id*. at 32.

As noted recently by our supreme court, in Tennessee, the Legislature has dispensed with "the time and expense of litigating the right to appointed counsel" in favor of creating a right to counsel at "all stages" of a parental termination case. *In re Carrington H.*, 483 S.W.3d 507, 527 (Tenn.), *cert. denied sub. nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, 137 S. Ct. 44 (2016); Tenn. Code Ann. § 37-1-126(a)(2)(B)(ii) (2014). If the parent is indigent, appointment of counsel is required. Tenn. Code Ann. § 37-1-126(a)(3). The procedure a court follows in appointing counsel for indigent parties is governed by section 1 of Tennessee Supreme Court Rule 13.

Supreme Court Rule 13 contemplates that an indigent party may explicitly waive the right to appointed counsel. TENN. SUP. CT. R. 13, Sec. 1(f)(1). But to do so, the waiver must be in writing and "signed by the indigent party in the presence of the court." *Id*. Additionally, the court must "satisfy all other applicable constitutional and procedural requirements relating to waiver of the right to counsel." *Id*. (f)(2).

We have also recognized an implicit waiver of the right to appointed counsel. For instance, where a client failed to contact his or her attorney; left the country, only to return shortly before trial; and otherwise failed to cooperate with his or her attorney, we have concluded that the client effectively waived the right to appointed counsel by his or her conduct. *State Dep't of Children's Servs. v. Agbigor*, No. M2000-03214-COA-R3-JV, 2002 WL 31528509, at *5-6 (Tenn. Ct. App. Nov. 15, 2002). In the context of a

7

parental termination proceeding, we have found an implicit waiver of the right to appointed counsel where the client failed "to assist his counsel or communicate with her at all in the two months before the hearing [on termination of parental rights]." *In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *5 (Tenn. Ct. App. Dec. 29, 2010); *see also In re M.E.*, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at *12 (Tenn. Ct. App. Aug. 16, 2004) ("Failure to cooperate with appointed counsel can constitute a waiver of the right to appointed counsel.")

An attorney appointed by the juvenile court for an indigent party in a parental termination case must seek leave of the court to withdraw. TENN. SUP. CT. R. 13, Sec. 1(e)(5). The grant or denial of a request to withdraw as counsel is a matter addressed to the court's discretion.[4] *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 135 (1st Cir. 1985); *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982); *Devincenzi v. Wright*, 882 P.2d 1263, 1265 (Alaska 1994); *In re Franke*, 55 A.3d 713, 720 (Md. Ct. Spec. App. 2012); *Williams v. Bank One, Texas, N.A.*, 15 S.W.3d 110, 114 (Tex. App. 1999); *Kingdom v. Jackson*, 896 P.2d 101, 103 (Wash. Ct. App. 1995). Our supreme court has explained what a trial court must consider in making a discretionary decision and what constitutes an abuse of that discretion:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (internal citations omitted).

Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc.*, 312 S.W.3d at 524. In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of

---

[4] If a constitutional right to counsel were at stake, the court would be presented with a mixed question of law and fact, and our review would be "de novo, accompanied by a presumption that the trial court's findings of fact [we]re correct." *State v. Holmes*, 302 S.W.3d 831, 837 (Tenn. 2010); *but see State v. Branam*, 855 S.W.2d 563, 566 (Tenn. 1993) (applying an abuse of discretion standard to the request of an attorney for an indigent criminal defendant to withdraw).

acceptable alternative dispositions." *Id.* We "review the underlying factual findings using the preponderance of the evidence standard . . . and . . . the lower court's legal determinations de novo without any presumption of correctness." *Id.* at 525.

In addition to Supreme Court Rule 13, applicable to appointed counsel for indigent defendants, we must consider the principles embodied in the Rules of Professional Conduct, which our courts consult when evaluating any request for leave to withdraw. *See, e.g., Zagorski v. State*, 983 S.W.2d 654, 660 (Tenn. 1998); *State v. Branam*, 855 S.W.2d 563, 566 (Tenn. 1993) *Prince v. Campbell*, No. 01A01-9806-CV-00276, 1999 WL 51844, at *2 (Tenn. Ct. App. Feb. 5, 1999). The Rules of Professional Conduct recognize some instances in which withdrawal from representation is mandatory, as when: "(1) the representation will result in a violation of the Rules of Professional Conduct or other law; (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or (3) the lawyer is discharged." TENN. SUP. CT. R. 8, RULES OF PROF'L CONDUCT R. 1.16(a) [hereinafter RULES OF PROF'L CONDUCT]. Although our review is hampered by the lack of a written motion to withdraw, we find nothing in the present record that would have necessitated mandatory withdrawal of Mother's counsel. Consequently, we consider whether withdrawal was appropriate at the option of Mother's counsel.

The Rules of Professional Conduct also recognize some instances in which withdrawal is not mandatory but still appropriate. Withdrawal for representation may be permissible, if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3) the client has used the lawyer's services to perpetrate a crime or fraud;

(4) the client insists upon taking action that the lawyer considers repugnant or imprudent;

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unanticipated and substantial financial burden on the lawyer or has been rendered unreasonably difficult by the client;

9

(7) other good cause for withdrawal exists; or

(8) the client gives informed consent confirmed in writing to the withdrawal of the lawyer.

RULES OF PROF'L CONDUCT R. 1.16(b). Based on his statements on the day of the trial, Mother's counsel based his request to withdraw on his difficulties in communicating with his client and her failure to appear for the trial. As such, we assume that counsel believed withdrawal was appropriate because Mother had "fail[ed] substantially to fulfill an obligation to [counsel]" and/or "the representation . . . ha[d] been rendered unreasonably difficult by [Mother]." *See* RULES OF PROF'L CONDUCT R. 1.16(a)(5) & (6).

As for a failure to fulfill an obligation to counsel, we find the facts in the record insufficient to support such a finding. The information provided by counsel regarding his efforts to communicate with his client was limited as was the court's questioning. Further, counsel did not indicate whether he provided Mother any prior warning that he might withdraw.

As for rendering the representation unreasonably difficult, we agree that a failure to communicate and the failure to appear for trial can render a representation unreasonably difficult. *See Agbigor*, 2002 WL 31528509, at *5-6. But, in this case, counsel resumed his representation after Mother tardily appeared for the trial. After resuming the representation, counsel then moved to withdraw again stating he was "not prepared."

Under these circumstances, we conclude it was error for the court to grant Mother's counsel leave to withdraw. We are hard pressed to divine how counsel thought he might be better prepared after a brief meeting with Mother. To the extent that counsel was relying upon his apparent past difficulties in communicating with Mother, counsel failed to establish Mother's obligations in that regard or that he had provided suitable notice that he would withdraw if Mother failed to satisfy those obligations.

In light of our conclusion, we vacate the judgment of the juvenile court, but only to the extent it terminated the parental rights of Mother. We remand for a new trial. On remand, the court should make a new determination concerning Mother's indigency and, if necessary, appoint her counsel.

## B. REMAINING ISSUES

As noted above, Mother has also appealed on the basis that there was not clear and convincing evidence of some, but not all, of the statutory grounds found by the trial court for termination of parental rights. And Mother submits that there was not clear and convincing evidence that termination was in the children's best interests. We conclude,

in light of our resolution of the preceding issue, that it is unnecessary for us to reach these issues.

We are mindful of our supreme court's direction that we review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests. *In re Carrington H.*, 483 S.W.3d at 525. This serves to prevent "unnecessary remands of cases" and the important goal of speedily resolving parental termination cases. *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). However, parents are also entitled to fundamentally fair procedures in termination proceedings. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)). Given that we have determined Mother was denied these fundamentally fair procedures, we find it inappropriate to review findings based on evidence that went largely unchallenged by Mother and which was offered at a hearing during which Mother did not have the benefit of counsel. "[U]ltimate rights should be decided only when the court is 'in possession of the materials necessary to enable it to do full and complete justice between the parties.'" *Interstate Transit, Inc. v. City of Detroit*, 46 F.2d 42, 43 (6th Cir. 1931) (quoting *Eagle Glass & Mfg. Co. v. Rowe*, 245 U.S. 275, 280 (1917)).

We further note that, outside of the context of parental termination cases, appellate courts generally refrain from deciding issues not necessary to the resolution of the appeal. Indeed, when presented with multiple issues on appeal, one of which is dispositive, we have consistently found the remaining issues to be pretermitted. *See, e.g.*, *State v. Mellon*, 118 S.W.3d 340, 348 (Tenn. 2003) ("Because the issue of the knowing and voluntary nature of the pleas [of the criminal defendant] is dispositive, the other numerous issues raised on appeal are pretermitted."); *Boyd's Creek Enters., LLC v. Sevier Cty.*, 362 S.W.3d 600, 603 (Tenn. Ct. App. 2010); *Braden v. Hall*, 730 S.W.2d 329, 331 (Tenn. Ct. App. 1987). Our failure to do so results in dicta, not in binding precedent. *Bellar v. Nat'l Motor Fleets, Inc.*, 450 S.W.2d 312, 313-14 (Tenn. 1970) ("Dictum is an opinion expressed by a court upon some question of law which is not necessary to the decision of the case before it."); *Shepherd Fleets, Inc. v. Opryland USA, Inc.*, 759 S.W.2d 914, 922 (Tenn. Ct. App. 1988) ("Court decisions must be read with special reference to the questions involved and necessary to be decided, and language used which is not decisive of the case or decided therein is not binding as precedent.").

## III.

Because the court erred in granting Mother's counsel leave to withdraw, we vacate the judgment of the court to the extent it terminated the parental rights of Mother. We remand for a new trial and for such other proceedings that are appropriate and consistent with this opinion.

_____

W. NEAL MCBRAYER, JUDGE